HIGGINBOTHAM, J.
[¡.This litigation concerns construction defects in a new house. The homeowners appeal the trial court’s judgment dismissing all of their claims against the builder.
BACKGROUND
In March 2005, builder, Chad Bradley Bordelon, through his construction company, Bordelon Commercial and Residential Construction, Inc. (“BCRC”), began construction of a new house for homeowners, John F. Hamilton, Jr., and his wife, Barbara Siragusa Hamilton.[1] The Hamiltons were long-time friends of Mr. Bordelon’s family and for several years, beginning in 2000, they had many discussions with Mr. Bordelon about building a two-story house set on pilings (rather than a concrete foundation) in Covington, Louisiana. In late 2004, the Hamiltons agreed to have Mr. Bordelon construct their home on a cost-plus basis, with the high end of their budget set at $350,000.00.[2] The Hamiltons’ building construction loan was approved in December 2004. Though construction of the Hamiltons’ house began in March 2005, progress slowed tremendously at the end of August 2005, when Hurricane Katrina hit the area. At that time, the house was still in the framing stage.
On April 19, 2006, a little over a year after construction began, Mr. Bordelon gave written notice to the Hamiltons that he would no longer be able to oversee the construction of their house. Mr. Bordelon’s reasons for terminating the agreement |3were related to storm issues (extremely high costs and delays) and a serious personal conflict with his construction foreman. When Mr. Bordelon left the project, the house had a roof, walls, and floorboards/sub-flooring, but no finishing work or insulation had been done, and most significantly, the joists and sills underneath the house had not been caulked/sealed. Because of his family’s relationship with the Hamiltons, Mr. Bordelon returned the unused portion of his builder’s fee to the Hamiltons. Although Mr. Bordelon recommended other builders to oversee the conclusion of the construction, Mr. Hamilton basically self-contracted the remainder of the job, completing the house with the use of subcontractors that had previously worked with Mr. Bordelon. It took another seven months to complete construction of the house. The Hamiltons were issued a cer *103 tificate of occupancy - and were finally able to move into their new house on or about December, 15, 2006.-
By January or February, 2007, the Hamiltons noticed water retention on their front porch after a hard rain. They telephoned Mr. Bordelon and asked him to check their porch, but after inspecting it, Mr. Bordelon indicated that the pooled water should not be a problem. During the summer of 2007, the Hamiltons- began to notice that the wood floors on the first floor of their home were buckling. They did not inform Mr. Bordelon of the flooring problem since he indicated that he no longer wanted to have anything to do with the house after terminating their agreement. Instead, the Hamiltons retained a flooring consultant, who advised them to install gutters and drainage (two things that were not included in the original construction plans) to route water away from the house. The gutter work was completed in 2007 at a cost of $5,962.00.
Eventually, because of ongoing issues with moisture inside the house, the Hamil-tons contracted with another residential contractor, Robert L. Gilhaus, of B.G. Contractors, on October 25, 2010, to remedy the house’s moisture problems. The Ham-iltons agreed to have Mr. Gilhaus seal all of the joists/sills and install flashing |4and a vapor/moisture barrier between the front porch and the house, all of which Mr. Gilhaus discovered was missing, .thereby allowing moisture inside of the Hamiltons’ house. The Hamiltons also contracted with Mr. Gilhaus to remove the entire front porch in order to correct the slope of the porch and to replace rotten boards, sills, and sub-flooring where the porch tied into the house. Once the porch was removed, it was discovered that there were no pilings under the front bay window area of the. house, there was no flashing between the porch and house, some floor joists and insulation had been installed incorrectly underneath the house, wood underneath the house was stained with moisture, and some sills underneath the house were in need of extra angle-iron support because the sills were not fully sitting on the foundational pilings. Mr. Gilhaus completed all of the remedial work on the house for a total of $40,957.90.. In November 2013, Mr. Gilhaus gave the Hamiltons an additional estimate of $14,032.50 to repair the upstairs balcony that, had begun to show signs of significant moisture damage. At no point in time during the remedial work did the Hamil-tons move out of their house, nor did they give any kind of notice to Mr. Bordelon concerning the multiple problems discovered by Mr. Gilhaus.
On November 18, 2011, almost five years after moving into the house, the Hamiltons filed a petition for breach of contract against Mr. Bordelon and his construction companies.[3] The Hamiltons alleged the house contained numerous and extensive construction defects that were the result of Mr. Bordelon’s bad workmanship, causing them to incur expenses to repair foundation, moisture, and flooring problems. Mr. Bordelon-and his companies denied all allegations. The matter proceeded to a bench trial on November 30,2014, where testimony from Mr. Hamilton, Mr. Bordelon, and Mr. Gilhaus was heard. Numerous exhibits were | ^admitted, including photographs *104 taken during Mr. Gilhaus’s remedial work, Mr. Bordelon’s letter terminating the contract, invoices/estimates for the remedial work, and information concerning the construction account.
After considering all of the testimony and evidence, the trial court issued written reasons for judgment on January 28, 2015, finding that the Hamiltons’ exclusive remedy was- governed by the New Home Warranty Act (“NHWA”), because “[a]ll damages alleged in the petition arose out of the work associated with home construction.” Additionally, the trial court concluded that the Hamiltons’ recovery under the NHWA was ultimately precluded for failure to comply with the NHWA’s mandatory notice requirements. Moreover, the' trial court determined that the Hamil-tons’ only possible non-perempted claims pertained to major structural defects, but the actual physical damage to the house’s foundational pilings or flooring did not reflect a major structural defect since the Hamiltons’ house was not unsafe, unsanitary, or unlivable. Accordingly, the trial court signed a judgment dismissing all of the Hamiltons’ claims against Mr. Borde-lon and his construction companies on February 24, 2015.
The Hamiltons appeal, assigning three errors: (1) the trial court erred in finding the NHWA was the Hamiltons’ exclusive remedy; (2) the trial court erred in finding that notice was not given in compliance with the NHWA; and (3) the trial court erred in finding that the Hamiltons’ claims were perempted under the NHWA.
STANDARD OF REVIEW
The trial court’s factual findings in cases involving the NHWA are subject to manifest error review. Hutcherson v. Harvey Smith Const., Inc., 2008-1046 (La.App. 1st Cir.2/13/09), 7 So.3d.775, 778. An appellate court cannot set aside the trial court’s factual findings unless it determines there is no reasonable factual basis for the findings and the findings are clearly wrong. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880, 882 (La.1993). If the findings are ^reasonable in light of the record reviewed in its entirety, this court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). With regard to questions of law, appellate review is simply a review of whether the trial court was legally correct or legally incorrect. Jenkins Building Supply, Inc. v. Thigpen, 2009-0903 (La.App. 1st Cir.12/23/09), 34 So.3d 867, 869. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law and render judgment on the record. Id.
DISCUSSION
Provisions of the NHWA, found at La. R.S. 9:3141 through 9:3150, have been amended many times since originally enacted in 1986; however, the applicable version of the NHWA is the one in effect on the date that the homeowners first occupy their new home. See Hutcherson, 7 So.3d at 778. Consequently, all NHWA references in this opinion are to the provisions in effect at the time that the Hamiltons moved into their house in mid-December 2006.
Initially, the Hamiltons argue that the NHWA is not their sole remedy, because Mr. Bordelon breached their contractual agreement when he terminated the contract before completing the house. We disagree; the Hamiltons do not have a breach of contract claim under these facts. Our review of the types of damage asserted by the Hamiltons in their petition re *105 veals that their damages arose wholly out of alleged construction defects and/or faulty workmanship by their builder, not from increased costs or unmet expectations associated with their builder’s termination of the construction agreement. A “builder” is defined in the NHWA as “any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto.” La. R.S. 9:3143(1). A “home” is “any new structure designed and used only for residential use ... ^constructed by the builder[.]” La. R.S. 9:3143(3). Mr. Bor-delon agreed to construct the Hamiltons’ new home by monitoring every aspect of the work on the home through his own employees or subcontractors. Thus, Mr. Bordelon was a builder within the meaning of the NHWA even though he did not actually complete construction of the entire house after terminating the agreement to build the Hamiltons’ new home.[4]
It is undisputed that construction of the house was completed through Mr. Hamilton’s self-contracting, and the Hamiltons took occupancy of the house approximately eight months after Mr. Bordelon walked away from the construction project. Because none of the alleged damages were sustained by the Hamiltons in connection with securing completion of the construction after Mr. Bordelon terminated their agreement, their damages are not related to any breach of contract. See Barnett v. Watkins, 2006-2442 (La.App. 1st Cir.9/19/07), 970 So.2d 1028, 1036-1037, writ denied, 2007-2066 (La.12/14/07), 970 So.2d 637 (distinguishing the case relied on by the Hamiltons, Thorn v. Caskey, 32,310 (La.App.2d Cir.9/22/99), 746 So.2d 663, 658, by pointing out that when construction is completed by others and the homeowners accept the home by taking occupancy, there are no damages arising out of a breach of contract to build). Construction defects and poor workmanship on the part of the builder are the types of defects squarely addressed by the NHWA. Thus, the trial court did not err in its determination that the NHWA provided the exclusive remedy in this case.
In Shaw v. Acadian Builders and Contractors, LLC, 2013-0397 (La.12/10/13), 130 So.3d 914, 917, the Louisiana Supreme Court discussed the purpose and scope of the NHWA, quoting from La. R.S. 9:3141 and 9:3150, and stating:
|sThe NBWA was introduced by the legislature to “promote commerce in Louisiana by providing clear, concise and mandatory warranties for the purchasers and occupants of new homes in Louisiana,” and the act sets out “the exclusive remedies, warranties, and per-emptive periods as between builder and owner relative to home construction.”
The NHWA, in La. R.S. 9:3144(A), expressly provides mandatory warranties on behalf of every builder to the homeowner, ranging from one year to five years following the warranty commencement date. The warranty commencement date is the date that legal title to a home is conveyed to the initial purchaser or the date the home is first occupied, whichever is first. La. R.S. 9:3143(7).
The legislature has specifically provided some exclusions to the builder’s warranty. One of those exclusions is particularly relevant in this case; it is found at La. R.S. 9:3144(B)(16), and it provides:
*106 Any defect not: reported in writing by registered or certified mail to the builder ,.. prior to the expiration of the period specified in Subsection A of this Section for such defect plus thirty days. (Emphasis added.)
It is undisputed that the Hamiltons did not, at any time, report' any defect in writing by registered or certified mail to either Mr. Bordelon or his construction companies. The trial court determined that the. Hamiltons’ failure to give the required written notice was fatal to their claims. We agree. The legislature decided the builder should not be responsible for defects of which he was never made aware and never given the chance to remedy in accordance with the standards of the NHWA. See La. R.S. 9:3145 (“Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, within one year after knowledge of the defect, advising him of all defects and giving the builder a reasonable opportunity to comply with the provisions of this Chapter.”) See also Carter v. Duhe, 2005-0390 (La.1/19/06), 921 So.2d 963, 968. In such a case, not only is the owner precluded from recovery under the NHWA, he |nis also precluded from any theory of i*ecovery because the NHWA provides the exclusive remedy between owners and builders of new homes. Id.
The Hamiltons point out, however, that Mr. Bordelon never informed them of the NHWA requirements, as he was mandated to do pursuant to La. R.S. 9:3145 (“The builder shall give the owner written notice- of the requirements of this Chapter at the time of the closing.”). But this point is irrelevant to the outcome, because the legislature has not provided any penalties or exclusions when the builder fails to provide the owner with notice of the NHWA provisions. The warranties in the NHWA are mandatory and may not be waived. Carter, 921 So.2d at 969. The NHWA applies whether or not the builder gave the owner notice of the law that applies to any disputes which arise due to defects in the new construction. Id. Further, as the-Louisiana Supreme Court held in Carter, no prejudice is suffered where the builder fails to give the homeowner notice of the applicable law, because the homeowner is already charged with notice of this law under La. Civ.Code art. 5 (“[njo one may avail himself of ignorance of the law”). Id.
Additionally, the Hamiltons contend that other circuit courts of appeal have held that a homeowner’s failure to comply with the technical requirements of La. R.S. 9:3145 is not necessarily fatal to a NHWA claim when actual notice of specific defects is provided within the time limits to the builder. In their appellate brief, the Hamiltons cite to three cases as authority for this proposition: Cupit v. Hernandez, 45,670 (La.App.2d Cir.9/29/10), 48 So.3d 1114, 1117, writ denied, 2010-2466 (La.12/17/10), 51 So.3d 7; Frank v. Tran, 2007-983 (La.App. 3d Cir.01/30/08), 974 So.2d 861, 867; and Barrack v. J.F. Day & Co., Inc., 2007-0097 (La.App. 4th Cir.08/29/07), 966 So.2d 1064, 1068. We find all of those cases distinguishable from the case sub judice, in that each of the homeowners in those cases provided the builder with actual written or repeated verbal notice of some kind, as well as offering | inthe builder a reasonable opportunity to repair/remedy the alleged defects. That is not the scenario in this case.
The Hamiltons maintain that they gave actual notice to Mr. Bordelon when they telephoned him a few months after moving into the house to request that he inspect the water retention on their front porch. According to Mr. Hamilton, Mr. Bordelon *107 inspected the porch, but he determined that the water would not be a problem. Mr. Hamilton testified that they decided to “let it slide.” The Hamiltons did not call Mr. Bordelon back to inspect or repair any of the alleged defects in the house once the front porch was removed by another builder and the extensive moisture damage and defective workmanship was discovered.
Our review of - the record confirms that the Hamiltons never actually notified Mr. Bordelon of any defective workmanship or dissatisfaction with the construction of the house; they merely asked him to inspect standing water on their front porch. Further, the Hamiltons did not make any specific request that Mr. Bordelon repair the porch or any other defect related to moisture intrusion into the house. Failure to give notice of a defect negated any ability of Mr. Bordelon to inspect and determine whether the allegations of defective work or poor workmanship were true, and once the Hamiltons hired Mr. Gilhaus to make the repairs, Mr. Bordelon lost the opportunity to remedy any defects in accordance with the NHWA. Thus, we conclude that the Hamiltons’ failure to properly notify Mr. Bordelon of the construction defects is fatal to their NHWA claims; and the trial court did not err in dismissing their suit on that basis. See Jenkins Building'Supply, 34 So.3d at 871.
Finally, in light of our disposition of the notice issue, we will pretermit a full discussion of the Hamiltons’ final assignment of error concerning whether their NHWA claims are perempted. Even so, we feel compelled to point out that the only possible warranty period that the Hamiltons argue has not expired is the five-year warranty for major structural defects. See La.' R.S. 9:3144(A)(3).. The NHWA | ndefines a “major structural defect” to mean “any actual physical damage” to “designated load-bearing portions of a home caused by- failure of the load-bearing portions” — such as “[foundation systems and footings” or “[floor systems” — which “affects their load-bearing functions to the extent that the home be: comes unsafe, unsanitary, or is otherwise unlivable.” La. R.S. 9:3143(5)(a) and (g). The record is devoid of any evidence that the house ever became unsafe, unsanitary, or was otherwise unlivable, for any reason, much less a moisture problem that actually caused failure of a load-bearing portion of the home. To the contrary, the record clearly shows that the Hamiltons have continuously lived in the house since the day they took occupancy in December 2006. Further, Mr. Gilhaus specifically testified that despite the' damage to the house, it was “safe,” was “not unlivable,” and was not in danger of collapsing. Accordingly, it is apparent that the trial court’s ruling as to this final issue was also correct. The Hamiltons’ claims of defective workmanship that allowed moisture into their home did not concern a major structural defect. As such, the Hamiltons’ claims were subject to the one-year warranty set forth in La. R.S. 9:3144(A)(1) and the thirty-day peremptive period following the expiration of that warranty as provided in La. R.S. 9:3146.[5]
CONCLUSION
For the outlined reasons, we affirm the judgment of the trial court dismissing all of the Hamiltons’ claims against Chad *108 Bradley Bordelon and his two construction companies, Bradley Builders, Inc., and Bordelon Construction and Residential Construction, Inc. All costs of this appeal are assessed against John F. Hamilton, Jr. and his wife, Barbara Siragusa Hamilton.
AFFIRMED.
CRAIN, J., dissents and assigns reasons.

. Mr. Bordelon had previously conducted his residential construction business through another company known as Bradley Builders, Inc., but that company was dissolved sometime before the parties contracted in 2004. At the time of construction, Mr. Bordelon operated his business through BCRC. While Mr. Bordelon and both of his construction companies were named defendants in this lawsuit, the record reflects that Bradley Builders, Inc. was not actually involved in any of the work performed on the Hamiltons[1] house.

. According to Mr. Bordelon, a cost-plus contract covers the cost of the construction plus a builder’s fee for oversight of the construction. The Hamiltons agreed to pay Mr. Bordelon a builder’s fee of $45,000.00. The record does not contain an executed written contract; however, the parties do not dispute the basic terms of their agreement. Notably, however, there is no evidence of a deadline for completing construction of the house.

. The Hamiltons also named as defendants an alleged liability insurer for Mr. Bordelon and his construction companies, Assurance Company of America, erroneously identified as "Maryland Casualty Company,” and the Louisiana Homebuilders Association General Liability Trust. The Hamiltons voluntarily dismissed both of those defendants before trial, reserving their rights to proceed against Mr. Bordelon and his two construction companies.

. We distinguish Allstate Enterprises, Inc. v. Brown, 39,467 (La.App.2d Cir.6/29/05), 907 So.2d 904, 911-12, wherein the owners contracted with a company that only agreed to furnish labor for a portion of the construction of their new home and was, therefore, more akin to a subcontractor, that was not covered by the exclusive provisions of the NHWA. See Cosman v. Cabrera, 2009-0265 (La.App. 1st Cir.10/23/09), 28 So.3d 1075, 1079.

. Louisiana Revised Statute 9:3146 establishes that "[a]ny action to enforce any warranty ... shall be subject to a peremptive period of thirty days after the expiration of the appropriate time period provided in [La.] R.S.. 9:3144.” (Emphasis added.) ‘‘[P]er-emption ... may be noticed by either the trial or appellate court on its own motion." La. Code Civ. P. art. 927(B).