**Isaac ROBINSON**

v.

**WAYNE AND BEVERLY PAPANIA AND PYRENEES INVESTMENTS, LLC**

**2015 CA 1354**

Court of Appeal of Louisiana, First Circuit.

October 31, 2016

---

Wayne J. Jablonowski Slidell, Louisiana Counsel for Defendants Third-Party Plaintiffs-Appellants Wayne Papania and Beverly Papania

William J. Faustermann, Jr. Slidell, Louisiana Counsel for Defendants Third-Party Defendants-Appellees Pyrenees Investments, LLC and Samuel C. LeBlanc, Jr.

BEFORE: HIGGINBOTHAM, THERIOT, AND CHUTZ, JJ.

CHUTZ, J.

Appellants, Wayne and Beverly Papania, appeal the dismissal of their third-party demand for breach of contract, fraud, various theories of negligence, and under the New Home Warranty Act (NHWA),[1] against appellees, Pyrenees Investments, LLC (Pyrenees) and Samuel C. LeBlanc, Jr., when the trial court sustained peremptory exceptions raising the objections of no cause of action and peremption and granted a motion for summary judgment filed by Pyrenees and LeBlanc. We reverse in part, affirm in part, and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This multi-party litigation arises out of the Papanias' construction of a new home in the Maple Ridge Subdivision in Covington, Louisiana. On March 22, 2005, a subcontractor filed suit on an open account against the Papanias and Pyrenees, the general contractor on the project, averring entitlement to remuneration for work performed in conjunction with the construction. On August 16, 2006, along with their answer and a reconventional demand against the subcontractor, the Papanias asserted a third-party demand against Pyrenees, averring that as the general contractor, Pyrenees was liable to them for any amounts they were ordered to pay the subcontractor. Pyrenees answered the third-party demand, generally denying the Papanias' claims.

On March 30, 2009, the Papanias amended their third-party demand against Pyrenees to claim damages, alleging that various itemized works Pyrenees had undertaken were faulty, problematic, and defective. The Papanias also averred Pyrenees was responsible for the damages they

suffered as a result of remedial actions they had undertaken as well as for collateral damages. Pyrenees answered the amended third-party demand on June 5, 2009, generally denying the Papanias' allegations.

On November 4, 2009, the Papanias again amended their third-party demand. This time, they asserted claims against LeBlanc, alleging that he was the owner and sole member of Pyrenees; a unity of interest and ownership existed between LeBlanc and Pyrenees insofar as the Papanias construction contract; Pyrenees was the alter ego of LeBlanc; and that, as such, Pyrenees was an instrumentality for LeBlanc's actions. The Papanias claimed that LeBlanc had misrepresented to them that Pyrenees held a valid contractor's license and that it carried insurance which "would cover the sorts of claims" filed in the third-party demand, thereby inducing them to enter into the construction contract. According to the amended third-party pleading, both Pyrenees and LeBlanc were liable to the Papanias for all the damages they had incurred. An answer generally denying the Papanias' allegations was filed by Pyrenees and LeBlanc on January 21, 2010.

With less than three weeks before the scheduled trial on the merits, on November 12, 2014, Pyrenees and LeBlanc filed a peremptory exception raising the objection of no cause of action, contending that the NHWA was the exclusive remedy available to the Papanias for the claims alleged in their third-party pleadings. Pyrenees and LeBlanc filed a second peremptory exception, objecting on the basis of peremption as to the claims levied against LeBlanc in his individual capacity, urging that by November 4, 2009, when the Papanias filed their third-party demand against LeBlanc,

1. See La. R.S. 9:3141-3150.

the time limitation for their claims, which were limited to relief under the NHWA, had elapsed. Lastly, Pyrenees and Le-Blanc sought dismissal from the lawsuit by summary judgment, maintaining that the Papanias failed to establish the requisite notice necessary to support a claim under the NHWA, which was the only viable relief available to them.

After a hearing, the trial court sustained the exception of no cause of action and dismissed "all claims not cognizable under the [NHWA]"; sustained the exception of peremption and dismissed all claims against LeBlanc; and granted ⌊4summary judgment, dismissing all the remaining NHWA claims against Pyrenees and Le-Blanc. This appeal followed.[2]

## II. NHWA

The NHWA was originally enacted in 1986 for the purpose stated in La. R.S. 9:3141:

> The legislature finds a need to promote commerce in Louisiana by providing clear, concise, and mandatory warranties for the purchasers and occupants of new homes in Louisiana and by providing for the use of homeowners' insurance as additional protection for the public against defects in the construction of new homes. This need can be met by providing a warranty for a new home purchaser defining the responsibility of the builder to that purchaser and subsequent purchasers during the warranty periods provided herein. The warranty, which is mandatory in most cases, shall apply whether or not building code regulations are in effect in the location of the structure, thereby promoting uniformity

of defined building standards. Additionally, all provisions of this Chapter shall apply to any defect although there is no building standard directly regulating the defective workmanship or materials.

The NHWA's "minimum required warranties" are set forth in La. R.S. 9:3144A, which states:

> A. Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the owner:
>
> (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
>
> (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
>
> (3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

⌊5Under the NHWA and the facts of this case, the "warranty commencement date" is the date that the home was first occupied. See La. R.S. 9:3143(7). A "builder" subject to the NHWA includes any person or limited liability company which con-

---

**2.** On October 13, 2015, this court issued a show-cause order. On April 21, 2016, the appeal was maintained but expressly reserved for this panel a final determination on the propriety of the appeal. See *Robinson v. Pa-* *pania*, 2015–1354 (La. App. 1st Cir. 4/21/2016) (unpublished action). We conclude the appeal is properly before us, see La. C.C.P. art. 1915A(1) and (3), and, therefore, maintain the appeal.

structs a home. La. R.S. 9:3143(1). And an "owner" under the NHWA is defined as the initial purchaser of a home. In this appeal, it is undisputed that Pyrenees and LeBlanc were "builders" and the Papanias were "owners" under the provisions of the NHWA.

## III. NO CAUSE OF ACTION

On appeal, the Papanias contend the trial court erred when it dismissed all of their claims "not cognizable under the [NHWA]." They maintain they have asserted claims against Pyrenees and LeBlanc for breach of contract, fraud, negligent misrepresentation, and negligence for a statutory violation in addition to those under the NHWA.

■ The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 91–2708 (La. 4/12/93), 616 So.2d 1234, 1235. No evidence may be introduced to support or controvert an exception of no cause of action. La. C.C.P. art. 931. Therefore, the court reviews the petition and accepts well-pleaded allegations of fact as true. *Id.* Any facts shown in annexed documents must also be accepted as true. *Pelican Educ. Found., Inc. v. Louisiana State Bd. of Elementary & Secondary Educ.*, 2011–2067 (La.App. 1 Cir. 6/22/12), 97 So.3d 440, 444.

■ Generally, an exception of no cause of action should not be maintained in part, so as to prevent a multiplicity of appeals thereby forcing an appellate court to consider the merits of the action in a piecemeal fashion. *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1236. If there are two or more items of damages or theories of recovery that arise out of the operative facts of a single transaction or occurrence, a partial judgment on an exception of no cause of action should not be rendered to dismiss an item of damages or theory of recovery. *Id.*, 616 So.2d at 1239.

■ An appellate court conducts a de novo review of a trial court's ruling sustaining an exception of no cause of action, because the exception raises a question of law and the trial court's decision is based only on the sufficiency of the petition. *Industrial Companies, Inc. v. Durbin*, 2002–0665 (La. 1/28/03), 837 So.2d 1207, 1213. Every reasonable interpretation must be accorded the language of the petition in favor of maintaining its sufficiency and affording the plaintiff the opportunity of presenting evidence at trial. *Id.*; see also *Louisiana Public Service Comm'n v. Louisiana State Legislature*, 2012–0353 (La.App. 1 Cir. 4/26/13), 117 So.3d 532, 537. The pertinent question is whether, in the light most favorable to the plaintiff and with every doubt resolved in plaintiff's behalf, the petition states any valid cause of action for relief. *State, Div. of Admin., Office of Facility Planning and Control v. Infinity Sur. Agency, L.L.C.*, 2010–2264 (La. 5/10/11), 63 So.3d 940, 946.

Initially, we note that in their first amended third-party demand, the Papanias clearly asserted defects existed in their new home as a result of Pyrenees' substandard workmanship, negligence, and negligent supervision. And in their second amended third-party demand, the Papanias alleged that with regard to the contract "any individuality and separateness" between LeBlanc and Pyrenees ceased. Thus, there is no error in the trial court's conclusion that the NHWA is applicable under the facts alleged in the Papanias' pleadings.

### A. Claim for Breach of Contract

■ The NHWA is not the exclusive remedy available to new homeowners in an

action against the builder based on the builder's failure to complete construction of home. See *Jenkins Bldg. Supply, Inc. v. Thigpen*, 2009–0903 (La.App. 1 Cir. 12/23/09), 34 So.3d 867, 871. The NHWA is designed to protect the owner from faulty workmanship, but not to insure completion of the construction of a home under the terms of the contract between the owner and builder. *Thorn v. Caskey*, 32,310 (La. App. 2 Cir. 9/22/99), 745 So.2d 653, 658.

Recently, another panel of this court considered a new homeowners' assertion that because a builder terminated the construction contract before completion of the new home, the builder was liable to them under a theory of breach of contract. *Siragusa v. Bordelon*, 2015–1372 (La.App. 1 Cir. 4/15/16), 195 So.3d 100, 104–05. In limiting the availability of breach of contract relief to new homeowners, the *Siragusa* court found no error in the trial court's conclusion that the new homeowners' relief was exclusively under the NHWA because the evidence established that none of the owners' damages were sustained "in connection with securing completion of the construction after [the builder] terminated the agreement." Therefore, the new homeowners failed to prove that their damages were related to a breach of contract. *Id.*, 195 So.3d at 105. See also *Barnett v. Watkins*, 2006–2442 (La.App. 1 Cir. 9/19/07), 970 So.2d 1028, 1036–1037, writ denied, 2007–2066 (La. 12/14/07), 970 So.2d 537 (where summary judgment evidence showed that construction was completed by the builder's principals and the new

homeowners' written acceptance stated they accepted their residence "in full compliance with the contract" between them and builder, there were no damages arising out of a breach of contract to build; therefore, the NHWA provided the exclusive remedy).

In their March 30, 2009, amended third-party demand, the Papanias alleged that they entered into a construction contract with Pyrenees; Pyrenees failed to perform in accordance with the contract; and they subsequently terminated the contract with Pyrenees. They claimed Pyrenees was liable to them for damages for remediation work they had to undertake and for collateral damages. In the light most favorable to the Papanias with every doubt resolved in their favor, and allowing every reasonable interpretation in favor of maintaining their claims, based on the allegations of the third-party demand, particularly that the construction contract "was ... terminated as a result of the [construction] issues," the Papanias have averred facts which, if proven, would result in damages for increased costs and unmet expectations, i.e., amounts they would have incurred in connection with securing completion of the construction after termination of the construction contract. See *Siragusa*, 195 So.3d at 105. Thus, although minimal, these factual allegations, coupled with the allegation that the individuality and separateness between LeBlanc and Pyrenees ceased, are sufficient to state a cause of action for breach of contract based upon the builder's failure to complete construction.[3] Therefore, it

---

**3.** The Papanias failed to allege that the builders abandoned the construction contract or the date they first occupied the new home so as to commence the NHWA warranties. Because a dilatory exception objecting to the vagueness of the petition was not asserted, the lack of clarity of the third-party demand was waived. La. C.C.P. arts. 926 and 928. But

evidence admitted in support of summary judgment and the exception of peremption apprised Pyrenees and LeBlanc of additional facts, allowing them to more clearly identify the causes of action the Papanias asserted, which is the purpose of the exception of vagueness. See *Vanderbrook v. Jean*, 2006–

was improper for the trial court to sustain an exception of no cause of action to dismiss the Papanias' breach of contract claim.

## B. Fraud

Fraud is one of the three vices of consent in a contractual relationship. See La. C.C. art. 1948. A contract is null when the requirements for its formation have not been met. La. C.C. art. 2029. When a party does not give his consent freely, the contract is a relative nullity. See La. C.C. art. 2031. A relatively null contract that has been declared null is deemed never to have existed. The parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages. La. C.C. art. 2033.

La. C.C. art. 1953 defines fraud as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." In order to succeed on an action for fraud against a party to a contract, three elements must be proved: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's consent to the contract. *Meyer & Associates, Inc. v. Coushatta Tribe of Louisiana*, 2014–1109 (La.App. 3 Cir. 1/27/16), 185 So.3d 222, 242–43, writ denied, 2016–00369 (La. 4/22/16), 191 So.3d 1048 (quoting *Sepulvado v. Procell*, 2012–271 (La.App. 3 Cir. 10/3/12), 99 So.3d 1129, 1134).

Since the fraud claim arises out of a separate and distinct transaction or occurrence—i.e., *formation* of the contract—from that of *performance* of the contract that was the operative factual transaction for the breach of contract and NHWA claims, the trial court could properly dismiss a pleading that failed to state a cause of action in fraud. See *Everything on Wheels Subaru, Inc.*, 616 So.2d at 1239 (where two or more actions are cumulated which could have been brought separately because they were based on operative facts of separate and distinct transactions or occurrences, partial judgment may be rendered to dismiss one action on an exception of no cause of action, while leaving other actions to be tried on merits).

At the outset, we must determine whether the Papanias actually stated a cause of action to support a claim of fraud. In the second amended, third-party demand, the Papanias averred that LeBlanc advised them that Pyrenees held a valid contractor's license for the construction of new homes and had in effect a valid insurance policy that would provide coverage for "the sorts of claims" for which the Papanias are presently suing. The Papanias also alleged that LeBlanc knew his misrepresentation that Pyrenees held a valid contractor's license was a principal cause for the contract. According to their November 4, 2009 pleading, the Papanias claimed that these two misrepresentations by LeBlanc induced them to execute and sign the construction contract with Pyrenees. In addition to iterating that the individuality and separateness between LeBlanc and Pyrenees ceased insofar as the construction contract, the Papanias claimed entitlement to reasonable damages for the fraudulent inducement of contract. Taking as true all of the Papanias' allegations of fact, we conclude they have stated

1975 (La.App. 1 Cir. 2/14/07), 959 So.2d 965, 968.

a cause of action in fraud against LeBlanc and Pyrenees.

■ Pointing to La. R.S. 9:3150, Pyrenees and LeBlanc maintain that, as a matter of law, the Papanias may not assert an independent claim of fraud. The salient provisions of that statute state that the NHWA "provides the exclusive remedies, warranties, and peremptive periods as between builder and [new home] owner relative to home construction and no other provisions of law relative to warranties and redhibitory vices and defects shall apply." Because the facts as averred obviously do not allow the Papanias to be restored to the situation that existed before the contract was made, Pyrenees and LeBlanc apparently contend that an award of damages pursuant to La. C.C. art. 2033 would necessarily be a claim for restitution for construction defects. Thus, they assert the NHWA is the exclusive remedy available to the Papanias. We disagree.

First, La. R.S. 9:3150 expressly limits its exclusivity to "home construction," stating that "no other provisions relative to *warranties and redhibitory defects and vices* shall apply." (Emphasis added.) Therefore, by its own terms, the NHWA is the exclusive remedy applicable for home construction but only insofar as claims relative to warranties and redhibitory defects and vices.

La. C.C. art. 2520 provides for the warranty against redhibitory defects, explaining:

A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect. The existence of such a defect gives a buyer the right to obtain rescission of the sale.

Thus, it is the *existence* of the redhibitory defect that gives right to relief. But as averred and broadly construed, the Papanias' pleading alleges that their consent upon entering into the contract was vitiated by a fraud perpetuated by LeBlanc. See and compare La. C.C. art. 2545, imposing redhibitory liability against the seller who knows of the defects, and its 1993 Revision Comment (a) (an action for fraud against such a seller under Article 2545 is not precluded when the requirements of Article 1953 are met).

Second, as we have already noted, the purpose of the NHWA is to, among other things, promote commerce and to provide additional protection to the public against defects in the construction of new homes. We cannot see how allowing fraud in the inducement of a construction contract would serve either of these express purposes of the NHWA. See and compare *Shelton v. Standard/700 Associates*, 2001–0587 (La. 10/16/01), 798 So.2d 60, 64 (a seller cannot contract against his own fraud and relieve himself of liability to fraudulently induced buyers; such a contract would be contra bonos mores and unenforceable).

Finally, despite the express terms of La. R.S. 9:3150, stating the NHWA provides the exclusive remedies as between a builder and a new homeowner relative to home construction, as we have already noted, the courts have allowed claims outside the NHWA for breach of contract when the builder abandons the construction project. See *Thorn*, 745 So.2d at 658. Additionally, the Louisiana Supreme Court has allowed a new homeowner to recover damages for fraud against the seller/builder of a house who made a knowing misrepresentation that the roof was free from defects and then covered up evidence of the defect. See *Stutts v. Melton*, 2013–0557 (La. 10/15/13), 130 So.3d 808, 813–14. In permitting recovery against the seller/builder under the Residential Property Disclosure

Act,[4] the **Stutts** court stated, "Any action claiming the [seller/builder] made a fraudulent misrepresentation on the [residential property disclosure] statement is not a claim 'relative to home construction' under La. R.S. 9:3150; it is a claim that the [seller/builder] has knowingly misrepresented that the home has a quality which he knows it not to have. In this case, a roof free from defects." **Id.**[5] Similarly, we conclude that in this case, the Papanias have alleged an action claiming the builder's fraud in inducing them to enter into the construction contract is not a claim "relative to home construction" so as to preclude an assertion of a cause of action in fraud outside the ambit of the NHWA.

## C. Misrepresentation/Statutory Violations

In general, the courts of this state have recognized that La. C.C. arts. 2315 and 2316, the codal articles defining tort law, encompass an action for negligent misrepresentation. Appellate courts have integrated the cause of action for negligent misrepresentation and misinformation into the duty-risk, negligence analysis. **In re Succession of McKnight**, 33,802 (La.App. 2 Cir. 10/4/00), 768 So.2d 794, 798, writ denied sub nom. **Succession of McKnight**, 2000–3072 (La. 2/9/01), 785 So.2d 822.

 ₁₃The violation of a statute or regulation does not automatically, in and of itself, impose civil liability, as Louisiana has no negligence per se doctrine. Civil responsibility is imposed only if the act in violation of the statute is the legal cause of damage to another. **Faucheaux v. Terrebonne Consol. Gov't**, 615 So.2d 289, 292–93 (La. 1993). The courts conduct a duty-risk analysis to determine whether liability arises as a result of a statutory violation. **Id.**

 The negligent misrepresentations for which the Papanias alleged entitlement to damages outside the ambit of the NHWA were representations to them by LeBlanc that (1) Pyrenees held a valid contractor's license for new home construction; and (2) Pyrenees had a particular insurance coverage, which it did not. These misrepresentations, the Papanias aver, induced them to agree to the construction contract. On appeal, the Papanias assert the alleged statutory violations for which they are entitled to relief outside the ambit of the NHWA are those in conjunction with the required licensing provisions for a contractor under La. R.S. 37:2150-2173.

Based on the allegations of their third-party demand, the claims for negligent misrepresentation and statutory violations arise out of the operative facts of the same transaction or occurrence for which the Papanias allege fraudulently induced them to enter into the construction contract. Therefore, we conclude that it was error for the trial court to sustain the exception of no cause of action to dismiss the Papanias' claims for alleged negligent misrepresentation and statutory violation against LeBlanc and Pyrenees (through the cessation of the individuality and separateness between him and Pyrenees). See **Everything on Wheels Subaru, Inc.**, 616 So.2d at 1239

Because the Papanias have averred facts sufficient to support claims against Pyre-

---

4. See La. R.S. 9:3196-3200.

5. The Residential Property Disclosure Act does not apply "to transfers of newly constructed residential real property, which has never been occupied." La. R.S. 9:3197B(5). Thus, in **Stutts**, although a sale of newly con-

structed residential property was at issue, it was because the new home had been occupied by the seller/builder that the provisions of the RPDA were applicable. **Stutts**, 130 So.3d at 812.

nees and LeBlanc for breach of contract, fraud, negligent misrepresentation, and liability for statutory violations, the trial court erred in sustaining the partial exception of no cause of action to dismiss all claims "not cognizable under the [NHWA]." Accordingly, the portion of the judgment that sustained the exception of no cause of action and dismissed all the Papanias' claim outside the ambit of the NHWA is reversed.

## IV. SUMMARY JUDGMENT

A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966B(2).[6] In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Temple v. Morgan*, 2015–1159 (La. App. 1 Cir. 6/3/16), 196 So.3d 71, 76.

The burden of proof is on the mover. See La. C.C.P. art. 966C(2). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion, the mover's burden does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the

adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. La. C.C.P. art. 966C(2); *Temple*, 196 So.3d at 76.

Summary judgment is appropriate when all the relevant facts are marshalled before the court, the marshalled facts are undisputed, and the only issue is the ultimate conclusion to be drawn from those facts. *Smith v. Our Lady of the Lake Hospital, Inc.*, 93–2512 (La. 7/5/94), 639 So.2d 730, 752. Summary judgment may be granted when reasonable minds must inevitably conclude that the mover is entitled to summary judgment. *Id.*

Pyrenees and LeBlanc filed a motion for summary judgment contending that the Papanias failed to establish the requisite notice necessary to support a claim under the NHWA. The trial court agreed and, because it had concluded the only viable relief available was under the NHWA, dismissed all the Papanias' claims against Pyrenees and LeBlanc.

La. R.S. 9:3145A, which sets forth the notice that new homeowners complaining of defects in their property are required to give to the builder, provides:

Before undertaking any repair himself or instituting any action for breach of warranty, the owner shall give the builder written notice, by registered or certified mail, within one year after knowledge of the defect, advising him of all defects and giving the builder a reason-

6. La. C.C.P. art. 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of Article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article in this case. See Acts 2015, No. 422, §§ 2 and 3.

able opportunity to comply with the provisions of this Chapter.

The notice requirement imposed on the new homeowner is also referenced in La. R.S. 9:3144B, stating in pertinent part:

Unless the parties otherwise agree in writing, the builder's warranty shall exclude the following items . . .

(4) Any damage to the extent it is caused or made worse by . . .

(c) Failure by the owner to give written notice by registered or certified mail to the builder of any defect within the time set forth in R.S. 9:3145. However, the provisions of this Subparagraph shall not be construed to change either the warranty periods enumerated in Subsection A of this Section or the notice requirements provided by R.S. 9:3145. . . .

(16) Any defect not reported in writing by registered or certified mail to the builder . . . prior to the expiration of the period specified in Subsection A of this Section for such defect plus thirty days.

The legislature decided the builder should not be responsible for defects of which he was never made aware and never given the chance to remedy in accordance with the standards of the NHWA. Without notice of defects, the builder is deprived of the more economically sound and judicially efficient alternative, i.e., the opportunity to cure the defects, an alternative in accord with the legislative intent to promote commerce and stability. *Carter v. Duhe*, 2005–0390 (La. 1/19/06), 921 So.2d 963, 968.

Pyrenees and LeBlanc asserted that the Papanias were unable to produce evidence to support a finding by the trier of fact that they had provided the builders with the requisite notice. The builders produced Wayne Papania's deposition testimony in which he testified that on September 11, 2006, he sent a letter to LeBlanc advising him that he was no longer builder on the project. Mr. Papania also stated that he verbally apprised LeBlanc that the quality of the builder's work was "unacceptable and horrendous," however he was unable to pinpoint on what date he told that to LeBlanc or whether it was before or after he sent the September 11, 2006, termination letter. The termination letter, also introduced into evidence, was addressed to LeBlanc and advised him that he was no longer the contractor of record for the construction project. It expressly stated that LeBlanc was responsible for the workmanship at that home for a period of one year. A United States Post Office certified mail receipt with LeBlanc's address was also produced by the builders, but the date on it was illegible.

In response, the Papanias produced LeBlanc's deposition testimony in which he acknowledged the Papanias advised subcontractors of complaints related to painting, plumbing, stucco application, flooring, and electrical work. LeBlanc testified that he overheard those complaints and intervened. He admitted that he did not finish the construction project. When shown an itemized list of complaints, LeBlanc stated he could not recall whether he had received it, but acknowledged that prior to termination, all the complaints on the list had been made known to him. LeBlanc likewise could not recall having seen the September 11, 2006, termination letter. He testified that he was in the process of "trying to get the final inspection" when he was terminated, indicating that he was unsure whether he had yet asked for it. The Papanias also relied on Mr. Papania's deposition testimony, which established that although LeBlanc was removed from the project, he continued to return to the construction site, Mr. Papania testified when LeBlanc returned, he was provided more information about issues related to uncompleted items but failed to address them.

Mr. Papania's testimony suggested that he sent the termination letter by certified mail to LeBlanc's address and that someone had signed for it. The termination letter included an express statement apprising LeBlanc of "many significant construction errors already found in many areas of [the] house."

Pyrenees and LeBlanc maintain that the Papanias failed to unequivocally establish they gave the builders "written notice, by registered or certified mail, within one year after knowledge of the defect, advising ... of all defects" as required under the NHWA. They, therefore, contend the summary judgment evidence demonstrated an absence of factual support of statutory notice, which is an essential element of the Papanias' NHWA claim and, thus, the trial court correctly granted summary judgment.

The Papanias rely on decisions from other circuit courts of appeal, which have held that a new homeowner's failure to comply with the technical requirements of La. R.S. 9:3145 is not necessarily fatal to a NHWA claim when actual notice of specific defects was provided within the time limits to the builder. In particular, they cite *Cupit v. Hernandez*, 45,670 (La.App. 2 Cir. 9/29/10), 48 So.3d 1114, 1117, writ denied, 2010–2466 (La. 12/17/10), 51 So.3d 7; *Frank v. |₁₈Tran*, 2007–983 (La.App. 3 Cir. 1/30/08), 974 So.2d 861, 867; and *Barrack v. J.F. Day & Co., Inc.*, 2007–0097 (La. App. 4th Cir. 8/29/07), 966 So.2d 1064, 1068.

In *Siragusa*, this court also reviewed the issue of whether a new homeowner's failure to comply with the provisions of La. R.S. 9:3145 was fatal to their NHWA claims and concluded it was. See *Siragusa*, 195 So.3d at 107. In reaching that conclusion, the *Siragusa* court distinguished the new homeowners' NHWA claim before them from those in *Cupit, Frank*, and *Barrack*, emphasizing that in the latter cases each of the new homeowners had provided the builder with actual written or repeated verbal notice of some kind, thereby allowing the builder a reasonable opportunity to repair/remedy the alleged defects. *Siragusa*, 195 So.3d at 106. In its review after the trial on the merits, the *Siragusa* court confirmed the record lacked any evidence showing that the new homeowners actually notified the builder of any defective workmanship or dissatisfaction with the construction of the house; or that the new homeowners had specifically requested repair of the areas they claimed were defective. Thus, lacking any evidence of notice, the *Siragusa* court concluded the trial court correctly dismissed the new homeowners' NHWA claim. *Id.*

Unlike the new homeowners in *Siragusa*, the Papanias were able to produce factual evidence sufficient to establish they will be able to satisfy their evidentiary burden of proof at trial. Through LeBlanc's testimony, they showed evidentiary support that LeBlanc had repeatedly received actual verbal notice of specific complaints related to construction project. And through Mr. Papania's testimony, the new homeowners provided evidence that would support a finding by the trier of fact that the builder was given a reasonable opportunity to repair. Although Pyrenees and LeBlanc have correctly pointed out that the copy of the receipt of the certified mailing addressed to LeBlanc and entered into evidence does not |₁₉definitively establish either the date the communication was sent or its contents, that receipt (which includes a tracking number) coupled with Mr. Papania's testimony identifying that it was the September 11, 2006 termination letter, if believed by the trier of fact, would allow for an inference the Papanias had complied with the technical requirements of La. R.S. 9:3145 to the extent of the

"many significant construction errors" for which LeBlanc had been verbally apprised.

Given this showing and the jurisprudence permitting a new homeowner who has provided a builder with actual written or repeated verbal notice and allowed the builder a reasonable opportunity to repair/remedy the alleged defects to pursue a NHWA claim, we conclude that outstanding material issues of fact preclude summary judgment on the issues of whether the Papanias provided the builders with notice as required by the NHWA and whether the builders were afforded a reasonable opportunity to repair. Accordingly, the trial court incorrectly granted summary judgment.

## V. PEREMPTION

Any action to enforce any warranty under the NHWA shall be subject to a peremptive period of thirty days after the expiration of the appropriate time period provided in R.S. 9:3144. La. R.S. 9:3146.

 Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. La. C.C. art. 3458. Peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461. Public policy requires that rights to which peremption periods attach are to be extinguished after passage of a specified period. *Reeder v. North*, 97-0239 (La. 10/21/97), 701 So.2d 1291, 1298.

 Because the trial court concluded the Papanias were limited to recovery only within the ambit of the NHWA, it sustained an objection of peremption to dismiss their claims against LeBlanc for one-year and two-year warranty relief under La. R.S. 9:3144A(1) and (2). The Papanias challenge the propriety of this determination.[7]

According to Mr. Papania's deposition testimony, the Papanias moved into their new home around April or May of 2007. Therefore, under an application of La. R.S. 9:3146, the peremptive period lapsed no later than thirty days after May 31, 2008— or July 2, 2008—for the warranty for any defect under La. R.S. 9:3144A(1) and thirty days after May 31, 2009—or July 2, 2009—for the warranty for the various systems defects under La. R.S. 9:3144A(2). Because the Papanias did not amend their petition until November 4, 2009 to add LeBlanc as a third-party defendant and allege that "any individuality and separateness" between LeBlanc and Pyrenees ceased, their claims against LeBlanc under La. R.S. 9:3144A(1) and (2) of the NHWA had already perempted. See *Marsh Engineering Inc. v. Parker*, 2004-0509 (La. App. 3 Cir. 9/29/04), 883 So.2d 1119, 1125–26, writ denied, 2004-2669 (La. 1/28/05), 893 So.2d 73 (client's filing against his attorney did not toll peremptive limitation period of his claims against attorney's solidary obligors who were added as defendants in a supplemental petition in a legal malpractice action). Accordingly, the trial court correctly sustained the exception of peremption to dismiss any claims the Papanias may have had for NHWA recovery against LeBlanc under La. R.S. 9:3144A(1) and (2).

---

7. While Pyrenees asserts in its appellate brief that the Papanias' claims under La. R.S. 9:3144A(1) would have also been perempted, in light of our ruling concluding the Papanias have other unadjudicated claims to try and since Pyrenees has not filed an exception with this court, see La. C.C.P. art. 2163, we decline to raise the exception of peremption on our own motion, see La. C.C.P. art. 927B, to sustain the objection as to one but less than all of the claims, demands, issues, or theories raised in the Papanias' pleading against Pyrenees.

## VI. DECREE

For these reasons, we maintain the appeal. The trial court's judgment is reversed insofar as it dismissed all of the Papanias' claims "not cognizable under the [NHWA]" and granted summary judgment to dismiss all the Papanias' claims under the NHWA. The trial court's judgment is affirmed insofar as it sustained the exception of peremption and dismissed the Papanias' NHWA claims against LeBlanc under the one and two year warranties set forth in La. R.S. 9:3144A.[8] The matter is remanded to the trial court to conduct proceedings consistent with this opinion. Appeal costs are assessed against appellees, third-party defendants, Pyrenees Investment LLC and Samuel C. LeBlanc, Jr.

**APPEAL MAINTAINED. JUDGMENT REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.**

8. Because we have concluded that the Papanias sufficiently alleged claims for breach of contract, fraud, negligent misrepresentation, and damages for alleged statutory violations in their third-party demand in addition to claims for NHWA recovery under La. R.S. 9:3144A(3), the dismissal of their claims against LeBlanc under La. R.S. 9:3144A(1) and (2) does not result in his dismissal from the litigation.