| DAVID L. MCGAHA AND MELISSA B. MCGAHA | * | NO. 2021-CA-0244 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| FRANKLIN HOMES, INC., GULF COAST MOBILE HOMES, INC., LANDRY MOBILE HOME TRANSPORTERS, INC., AND NTA, INC. | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 60-788, DIVISION "A"
Honorable Kevin D. Conner, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

**LOBRANO, J., DISSENTS IN PART, CONCURS IN PART, AND ASSIGNS REASONS.**

John W. Redmann
Edward Moreno
Travis J. Causey, Jr.
Cristian A. Galleguillos
LAW OFFICE OF JOHN W. REDMANN, LLC
1101 Westbank Expressway
Gretna, LA 70053

    COUNSEL FOR DAVID L. MCGAHA AND MELISSA B. MCGAHA

Lamont Paul Domingue
VOORHIES & LABBE
700 St. John Street, Suite 500
Lafayette, LA 70502

    COUNSEL FOR NTA, INC. and FRAKLIN HOMES, INC.

Jason D. Bone
Paula M. Wellons
TAYLOR, WELLONS, POLITZ & DUHE, APLC
1515 Poydras Street

Suite 1900
New Orleans, LA 70112

COUNSEL FOR LANDRY MOBILE HOME TRANSPORTERS, INC.

Wayne R. Maldonado
John C. Henry
Warren J. Greenwood
UNGARINO & MALDONADO, LLC
3850 North Causeway Boulevard
1280 Lakeway Two
Metairie, LA 70002

COUNSEL FOR GULF COAST MOBILE HOMES, INC.

**AFFIRMED; APPEAL OF GULF COAST MOBILE HOMES, INC.,
DISMISSED; ANSWER OF FRANKLIN HOMES, INC., DISMISSED;
APPEAL BY DAVID L. MCGAHA AND MELISSA B. MCGAHA
DISMISSED IN PART
FEBRUARY 4, 2022**

DNA
RBW

This appeal involves tort claims brought by David L. McGaha (hereinafter "Mr. McGaha") and Melissa B. McGaha (hereinafter "Mrs. McGaha") concerning alleged defects in their modular home. Mr. McGaha and Mrs. McGaha (hereinafter collectively "Plaintiffs") filed suit against Gulf Coast Mobile Homes, Inc. (hereinafter "Gulf Coast"); Franklin Homes, Inc. (hereinafter "Franklin Homes"); Landry Mobile Home Transporters, Inc. (hereinafter "Landry Transporters"); and NTA, Inc. (hereinafter "NTA"). Gulf Coast, Franklin Homes, Landry Transporters, and NTA (hereinafter collectively "Defendants") filed various exceptions and motions for summary judgment that the trial court granted in part and denied in part. Gulf Coast now seeks review of the trial court's judgment, which denied its motion for summary judgment regarding claims of fraud and intentional misrepresentation asserted by Plaintiffs. Additionally, Plaintiffs seek review of that portion of the trial court's judgment that granted Defendants' various exceptions. Further, Franklin Homes filed an answer to the appeal and seeks review of the trial court's judgment denying its exception in part as to Plaintiffs' claims of fraud and intentional misrepresentation.

For the following reasons, we dismiss Gulf Coast's appeal and the answer by Franklin Homes for lack of this Court's jurisdiction.  We affirm in part the portion of the trial court's judgment granting the exceptions of peremption and prescription filed by Gulf Coast, Franklin Homes, and NTA, except for the claims of fraud and intentional misrepresentation.  Further, we affirm the trial court's judgment granting the exception of peremption and prescription filed by Landry Transporters.  We dismiss Plaintiffs' appeal of the portion of the trial court's judgment granting NTA's exception of no cause of action for lack of this Court's jurisdiction.

## FACTUAL BACKGROUND

Plaintiffs, residents of Plaquemines Parish, lost their home during Hurricane Katrina in 2005.  Thereafter, they searched for a home that would withstand hurricane force winds of 140 miles per hour.  Ultimately, on October 23, 2006, Plaintiffs purchased from Gulf Coast a modular home, which Franklin Homes manufactured. NTA reviewed the design and manufacture of the home. Landry Transporters delivered the home to, and assembled the sections of the home on, Plaintiffs' lot. Plaintiffs claim that they purchased the home with the understanding that it would withstand winds of 140 miles per hour. However, in August 2012, Plaintiffs' home sustained structural damage during Hurricane Isaac, a storm which they assert contained wind speeds well below 140 miles per hour. Plaintiffs claimed the home sustained the damage because it was defective in design and manufacture.

# PROCEDURAL BACKGROUND

## I. PETITION FOR DAMAGES

After their home sustained structural damage during Hurricane Isaac, Plaintiffs filed a Petition for Damages on August 28, 2013. Therein, Plaintiffs claimed Hurricane Isaac caused significant structural damage to their home although the wind speed during the storm was well below 140 miles per hour. They asserted that Gulf Coast and Franklin Homes had represented and warranted that their home would withstand wind speeds of 140 miles per hour. Plaintiffs further alleged that NTA, an engineering firm, confirmed that the design and manufacture of the home met relevant building codes and design loads, such as a 140-mile-per-hour wind rating.[1]

In their petition, Plaintiffs contended that Defendants knew that the home contained vices and defects but failed to inform Plaintiffs of such. In particular, Plaintiffs alleged that Defendants fraudulently informed them that the home could withstand wind loads of 140 miles per hour. Plaintiffs asserted numerous causes of action against Defendants, including redhibition; violation of the Louisiana Unfair Trade Practices Act (LUTPA); negligence; negligent or intentional misrepresentation; violation of the Louisiana Products Liability Act (LPLA); detrimental reliance; breach of contract; and fraud. In response to Plaintiffs' Petition, Defendants filed various exceptions and motions for summary judgment.

---

[1] The parties utilize the terms "wind speed" and "wind load" in their briefs, seemingly interchangeably, though the terms have different meanings. "Wind speed," in meteorology, is defined as the "[r]atio of the distance covered by the air to the time taken to cover it." https://glossary.ametsoc.org/wiki/Wind_speed (last visited Feb. 3, 2022). "Wind load" is defined as "the load on a structure due to the action of wind." https://www.merriam-webster.com/dictionary/wind%20load (last visited Feb. 3, 2022).

## II. GULF COAST

Gulf Coast filed a motion for summary judgment contending that Plaintiffs could not meet the essential elements for their claims of fraud and intentional misrepresentation. Thus, Gulf Coast asserted that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law regarding Plaintiffs' fraud and intentional misrepresentation claims.

Additionally, Gulf Coast filed an exception of peremption and prescription. Gulf Coast argued that the claims for violation of LUTPA, negligence, negligent or intentional misrepresentation, violation of LPLA, breach of contract, detrimental reliance, and fraud were perempted or prescribed as a matter of law.

## III. LANDRY TRANSPORTERS

Landry Transporters filed a motion for summary judgment alleging that Plaintiffs lacked factual support for their claims of breach of contract, redhibition, violation of LPLA, violation of LUTPA, fraud, detrimental reliance, intentional misrepresentation, negligent misrepresentation, and negligence. Thus, Landry Transporters asserted as there were no genuine issues of material fact, it was entitled to judgment as a matter of law.

Landry Transporters also filed an exception of prescription and peremption. In the exception, Landry Transporters contended all claims against it were perempted under La. R.S. 9:2772.[2] Further, Landry Transporters contended that the fraud exception to La. R.S. 9:2772[3] did not apply to Plaintiffs' claims because

---

[2] Louisiana Revised Statutes 9:2772 pertains to the "[p]eremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon."

[3] Louisiana Revised Statutes 9:2772(H)(1) provides, in pertinent part, that "[t]he peremptive period provided by this Section shall not apply to an action to recover

there was no specific allegation of fraud in Plaintiffs' Petition and there was no viable claim for fraud against Landry Transporters. In sum, Landry Transporters contended all claims were time-barred under La. R.S. 9:2772. Alternatively, Landry Transporters filed a separate exception of peremption averring that Plaintiffs' claim under LUTPA was perempted pursuant to La. R.S. 51:1409.[4]

## IV. FRANKLIN HOMES

Franklin Homes filed a motion for summary judgment alleging that Plaintiffs lacked factual support for their claims of breach of contract, redhibition, violation of LPLA, violation of LUTPA, fraud, detrimental reliance, intentional misrepresentation, negligent misrepresentation, and negligence. In its motion, Franklin Homes asserted that because no genuine issues of material fact existed, it was entitled to judgment as a matter of law.

Further, Franklin Homes filed exceptions of peremption, prescription, and no cause of action. In these exceptions, Franklin Homes contended that Plaintiffs' claims were perempted, prescribed, and/or failed to state a cause of action against

---

on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon."

[4] Louisiana Revised Statutes 51:1409 provides, in pertinent part:

> A. Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages. . . .
>
> . . . .
>
> E. The action provided by this Section shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to this right of action.

it. In sum, Franklin Homes argued that the trial court should dismiss all of Plaintiffs' claims.

## V. NTA

NTA filed exceptions of peremption, prescription, and/or no cause of action, and NTA contended the trial court should dismiss all of Plaintiffs' claims.

Also, NTA filed a motion for summary judgment alleging that Plaintiffs lacked factual support for their claims of breach of contract, redhibition, violation of LPLA, violation of LUTPA, fraud, detrimental reliance, intentional misrepresentation, negligent misrepresentation, and negligence. NTA asserted that because no genuine issue of material fact existed, it was entitled to judgment as a matter of law.

Plaintiffs filed oppositions to Defendants' various exceptions and motions for summary judgment.

## VI. NOVEMBER 16, 2020 HEARING

The trial court held a hearing on November 16, 2020. During the hearing, the trial court accepted into evidence numerous exhibits attached to the various exceptions, motions, and oppositions. In pertinent part, the evidence included the deposition of Mr. McGaha; the deposition of Mrs. McGaha; Plaintiffs' Responses to Request for Admissions; the July 24, 2013 Report of Gurtler Bros. Consultants, Inc.; the deposition of Michael K.A. Gurtler; the data plate from Plaintiffs' home; the Plaquemines Parish Government Procedures for Building Permit; the June 26, 2006 quotation from Franklin Homes; the October 23, 2006 sales contract from Gulf Coast; the deposition of Bob D. Landry; Franklin Homes' Modular Installation Instructions; certified Plaquemines Parish documents; and Franklin Homes' Responses to Request for Admissions.

**A.** *Deposition of David L. McGaha*

Mr. McGaha was questioned about the 140-mile-per-hour wind speed allegation. In response, he pointed to Franklin Homes' quotation. He stated that the ability to withstand 140-mile-per-hour winds was the "biggest selling point" for Plaintiffs' home selection. In this regard, Mr. McGaha recalled the number "140" used in a visual advertisement at Gulf Coast that one could see from a distance while driving. He explained that he inquired about the 140-mile-per-hour wind rating and that it is the first item listed on the quotation. Mr. McGaha indicated he wanted a home that met Plaquemines Parish building requirements or exceeded them and that this constituted a buying point for Plaintiffs. Moreover, Mr. McGaha recalled that he and his wife specifically expressed this as a buying point during the purchase process in their conversations with a Gulf Coast salesperson, Will Groen (hereinafter "Mr. Groen"). Otherwise, Mr. McGaha asserted that Plaintiffs would not have purchased the home.

Mr. McGaha stated he did not think that Mr. Groen intended to harm Plaintiffs. Explaining the purchase process, Mr. McGaha stated that Plaintiffs and Mr. Groen met twice at Gulf Coast, during which time they reviewed the floor plan and made changes. Mr. McGaha stated that Plaintiffs intended the home to be permanent and that they had a foundation poured for this specific home. Mr. McGaha indicated that Mr. Groen should have realized they wanted the best based on their conversations.

Regarding the quotation they received from Franklin Homes, Mr. McGaha explained that it provides, "BUILD TO MODULAR SPECS (REQUIRES ENGINEERING FEE)." He stated that the quotation for the joint system also required an engineering fee, which constitutes evidence Plaintiffs spent extra

7

money on the home. Further, Mr. McGaha explained that Plaintiffs paid for architectural driftwood shingles, which are thirty-year shingles. He stated that he understood there would be some on-site roofing done to "marry" the two halves of the home together.

Mr. McGaha claimed that although Plaintiffs paid for thirty-year shingles, the house did not get the proper underlayment. When asked about the shingle underlayment, Mr. McGaha noted that the people who repaired his home showed him an example of the material used and told him what should have been there instead. He asserted that Defendants used substandard materials for the underlayment and that this was wrong and intentional fraud. Mr. McGaha clarified he did not learn about the incorrect underlayment after Plaintiffs' home sustained damage during Hurricane Gustav in 2008 because the damage to the roof from that storm was confined to a small section.

When asked to identify other defects in the home prior to 2012, Mr. McGaha averred they did not install the hardie board correctly.[5] Mr. McGaha indicated the entire house rattled and he kept nailing down the hardie boards; however, he agreed that hardie boards did not appear on Plaintiffs' initial 2007 punch list of home repairs. He identified items that were on the punch list that remained uncorrected, such as missing cabinets and unresolved issues with the refrigerator and utility room.

Mr. McGaha noted he was deployed with the Navy at the time that Landry Transporters delivered the home. He indicated no employee of Landry

---

[5] In the record, "hardie" is spelled "hardi", "hardie" and "hardy" when referring to the wall finish. "Hardie" appears to be the correct spelling. *See* https://www.JamesHardie.com.

Transporters made a representation and he lacked evidence that Landry Transporters intended to deceive him.

**B. *Deposition of Melissa B. McGaha***

Mrs. McGaha stated that she believed the house was pretty but knew it was the home to buy upon learning it would withstand 140-mile-per-hour winds. Further, Mrs. McGaha recalled Mr. Groen saying the home was sturdy; and she stated that Plaintiffs purchased the home manufactured by Franklin Homes due to Mr. Groen's representations it could withstand 140-mile-per-hour winds and was very sturdy. When asked what made the Franklin Home sturdy, Mrs. McGaha responded, "[t]he wind speed." She stated that no one mentioned to Plaintiffs how the shingles might be impacted by the wind in discussions about the 140-mile-per-hour winds.

Mrs. McGaha explained that Plaintiffs were living in the home by the time of her son's birthday on November 26, 2006. She acknowledged Landry Transporters delivered the home to the property. Further, Mrs. McGaha recalled that the house arrived flat and Landry Transporters raised it and secured the two halves of the home together. Additionally, she stated Landry Transporters performed some work on the roof, which took about two days. She also stated that after Landry Transporters left, a trim out crew installed the decking on the end walls, put in hardie-board or plank siding, and put flooring down.

Mrs. McGaha agreed an inspector from Plaquemines Parish inspected the property on November 7, 2006, and did not find any nonconformity with building codes or Parish regulations. She explained that she did not have any information that anyone knew the damages to her home during Hurricane Isaac were substantially certain to happen.

During her deposition, Mrs. McGaha identified a letter dated December 13, 2006, which requested that Plaintiffs identify any issues with the home and notify Franklin Homes within sixty days. To this end, Mrs. McGaha explained that she sent a punch list of items to Franklin Homes in January 2007. She contended Franklin Homes never resolved all of the items on her list because cabinets and cabinet pieces were still missing and they never boxed in the refrigerator.

Mrs. McGaha indicated the structural damage to the home following Hurricane Isaac in 2012 included the roof. She stated that she watched the demolition of the house and saw a gap in the roof and a lack of plywood. Additionally, Mrs. McGaha explained that shingles were lost along both sides of the gap during Hurricane Isaac.

Mrs. McGaha stated she called Franklin Homes after Hurricanes Gustav and Ike in 2008 to report that shingles were missing from the roof of their home along the gap line after those storms.[6] She explained that she contacted Franklin Homes in case Plaintiffs' insurance company denied their claim. Mrs. McGaha described additional damage from these hurricanes that occurred in one bedroom and to the

---

[6] Mrs. McGaha's discussion about damage to their home from storms prior to Hurricane Isaac in 2012 includes Hurricane Gustav and Hurricane Ike, both of which struck the Louisiana coast in September 2008. In her deposition, she does not distinguish between damage from Hurricane Gustav and Hurricane Ike. During her deposition, the following colloquy occurred:

> Q.    Can you tell me what percentage of your home took on water? And . . . let me back up. We know of . . . two named storms that came through the area before Hurricane Isaac from the time you took occupancy of your home in 2006 until [Hurricane] Isaac in 2012 - - Gustav and Ike. The damage that you've been talking about previously when you were being questioned by the other attorneys, was it during one of those storms and you just don't remember which; or, was it during a non-named storm?

> A. No. It was probably during one of those storms.

> Q. Fair enough. So I will refer to them interchangeably and just say Gustav and Ike, and we know it's one of those storms; correct?

> A. Correct.

flooring in the family room, but she could not definitively recall whether Plaintiffs also had to replace sheetrock in a bathroom. Additionally, she stated that Plaintiffs did not replace the entire roof after these hurricanes. She explained, however, that Plaintiffs repaired all of the damage prior to Hurricane Isaac striking in 2012 and that no other storm caused damage to the home.

Mrs. McGaha indicated that, after Hurricane Isaac, the entire house was wet and there was mold everywhere. She also explained that she saw a gap in the decking that forms the roof. Further, she asserted that Hurricane Isaac resulted in the roof in her daughter's bedroom caving in. She explained that this portion of the roof of the home had also sustained damage during Hurricanes Gustav and Ike, at which time some shingles above her daughter's bedroom came off.

## C. *Plaintiffs' Responses to Request for Admissions*

In their Responses to Request for Admissions, Plaintiffs admitted that they did not rely on a representation by Landry Transporters in making the decision to purchase. Further, Plaintiffs admitted they did not have a contract with Landry Transporters. They also admitted they lacked information that Landry Transporters made a false representation before or after their purchase of the home. Additionally, Plaintiffs admitted they had no information that Landry Transporters concealed information regarding attributes of the home, including the wind load rating.

**D.** *July 24, 2013 Report of Gurtler Bros. Consultants, Inc.*[7]

Michael K.A. Gurtler (hereinafter "Mr. Gurtler") is a licensed general contractor, who examined Plaintiffs' home and prepared a report. In the report, Mr. Gurtler noted siding missing from the front of the home. He further reported that nail heads almost penetrate the board and violate the manufacturer's installation instructions, which contributed to the home's siding being weaker than designed and to the siding's failure. Mr. Gurtler suggested Hurricane Isaac's winds twisted and racked the home. The report contained a photograph depicting dislodged siding. In the report, Mr. Gurtler submitted that the dislodged siding suggests that the home moved with respect to the brick skirt. Additionally, Mr. Gurtler noted mold and fungal growths on exposed wood framing and explained that "[t]he OSB[8] roof sheathing was wetted and compromised due to rainwater intrusion." Mr. Gurtler indicated that there was fungal growth on a section of drywall that could not be easily removed or remediated. Mr. Gurtler identified a roof-bracing member of poor quality and indicated that a four-inch vent duct at a roof penetration was draining more than seven weeks after Hurricane Isaac. Further, Mr. Gurtler noted in the report the presence of rust on an electrical fixture and conduit due to rainwater intrusion, as well as twisted steel hinges at a roof truss. Mr. Gurtler contended that lumber utilized at a particular section of the roof frame was of poor quality, and he identified a gap between roof sheathing sections along the hinged joint. He observed that the home contained twisted framing and

---

[7] Landry Transporters objected to the report, asserting that it contained engineering opinions that were beyond the recognized expertise of Michael K.A. Gurtler. The trial court admitted the report into evidence as that of a general contractor and not an engineer.

[8] "OSB" refers to oriented strand board.

poor-quality framing board, as well as inadequate shims between block piers and steel framing in the crawlspace. Mr. Gurtler also asserted that the home contained a single shim between the foundation pier and the steel carriage though the manufacturer's instructions called for a double shim. Mr. Gurtler's inspection further revealed trapped water in the insulation below the floors.

In the report, Mr. Gurtler indicated the inspection of Plaintiffs' home, as well as ten others built by Franklin Homes, located a thin, paper material at the joints of the roof. Mr. Gurtler contended that the thin, paper material was not suitable for use as roofing felt. He noted the manufacturer was supposed to ship fifteen-pound roofing felt for use at the joints instead. Mr. Gurtler asserted that the thin, paper material allowed water intrusion at the hinged joint of the roof during Hurricane Isaac. Further, he reported that the oriented strand board (hereinafter "OSB") sub-decking and exterior wall sheathing became wet; lost its structural integrity; and promoted mold growth. Mr. Gurtler contended the OSB sub-decking and exterior wall sheathing required replacement.

Mr. Gurtler contended in the report that the home shifted because of Hurricane Isaac's winds due to improperly installed shims, as well as defective materials and construction. He concluded that based on the racking, damages to the structure, and the remediation required due to the mold, the home was a constructive total loss because the cost to repair was more than the cost to replace.

**E.** *Deposition of Mr. Gurtler*[9]

During his deposition, Mr. Gurtler[10] contended that the installation instructions for the home provided that the roof must be installed over solid decking. Thus, he noted that if there is a significant gap in the decking, the installer must fill the gap in order to nail the roof on properly. Mr. Gurtler indicated that roofing manufacturers specify how to nail their roofs in order to achieve a certain wind resistance. He contended that the Franklin Homes' roof was to be nailed to withstand a 140-mile-per-hour wind load but failed at winds significantly below that. Mr. Gurtler explained that the roof failures he witnessed could be a result of an issue with the decking, nailing, or the felt underlay.

During the deposition, counsel read to Mr. Gurtler the definition of "fraud," as found in La. C.C. art. 1953, as "a misrepresentation or suppression of the truth made with the intention either to gain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." When asked if he had any information that any Defendant committed fraud, Mr. Gurtler responded that the homeowners were tremendously inconvenienced by, and suffered the loss of, homes that were destroyed by

---

[9] Mr. Gurtler gave this deposition testimony in *Barthelemy v. Franklin Homes, Inc.*, No. 60-787 (25th JDC). In *Barthelemy*, the defendants included Landry Transporters and NTA, as well as Franklin Homes, but the seller was not Gulf Coast.

[10] The *curriculum vitae* of Mr. Gurtler notes he graduated from Tulane University with an engineering degree. Under professional registrations, Mr. Gurtler indicated he is a licensed general contractor, certified thermographer, and certified moisture management professional. He also explained that he possessed an inactive home inspector license and an inactive membership in the American Society of Home Inspectors. Mr. Gurtler's areas of expertise include general contracting, cost of repair estimates, moisture management, thermographic imaging, construction management, construction deficiency inspections, commercial building inspections, structural inspections, foundation failure analysis, and contaminated sheetrock.

Hurricane Isaac. He asserted that the misrepresentation or suppression of the truth could result from the fact that the homeowners were told that the home would survive a certain wind load and would not experience catastrophic damages from a storm significantly below the stated wind load.

Mr. Gurtler admitted that saying the phrase "roof cover failed" is the equivalent of saying the "shingles blew off." However, he indicated the roof underlay or felt is supposed to shed water. Thus, Mr. Gurtler contended when one improperly installs roof underlay or felt, water can run underneath it and come into the home.

Mr. Gurtler noted his inspection report described "paper material" utilized as roofing felt and that he found the "paper material" at the joint only, not the entire roof. He explained that the portion of the roof installed at the factory used the correct underlayment. Nonetheless, Mr. Gurtler opined that based on the work done by Franklin Homes, the installer could not install the remainder of the roof in conformity with the guidelines of the material manufacturer. He explained that the manufacturer of the roofing materials instructs to start at the bottom and move upwards. Mr. Gurtler questioned how one could properly install the roof at the joint.

Mr. Gurtler also discussed the 140-mile-per-hour standard for the modular home:

> [It] is a theoretical design standard, and the intention is to have .
> . . your building materials resist associated . . . damages that
> would typically be associated with a complete failure. In other
> words, at 140 miles an hour, you don't want . . . your windows
> to blow off the building. That doesn't mean the windows won't
> break. That doesn't mean rainwater won't come around them.
> That doesn't mean the building won't flex. Doesn't mean that
> the building joints won't separate. It doesn't mean that parts of

15

> roofs won't fail.  The 140 is intended to represent a total failure of the building.

Mr. Gurtler noted his company conducted three to four hundred inspections after Hurricane Isaac and that every one of the homes had water intrusion to a certain degree.

## F. *The Data Plate*

Gulf Coast indicated that a data plate containing certain information about a modular home, such as the serial number and date of construction, is affixed permanently to the home before its delivery.  The data plate in Plaintiffs' home revealed NTA approved the design of the home.  It lists a floor live load of 40 PSF,[11] floor dead load of 8 PSF, roof live load of 20 PSF, roof dead load of 8 PSF, and wind speed of 140 miles per hour.

## G. *Plaquemines Parish Government's Procedures for Building Permit*

The Plaquemines Parish Government procedures pertaining to building permits required a plan to be submitted with a permit application.  The procedures mandate that "[a]ll plans are to withstand 130 MPH wind loads."

## H. *Franklin Homes' Quotation Dated June 26, 2006*

The June 26, 2006 quotation from Franklin Homes detailed the costs for the various aspects of the modular home.  In pertinent part, the first item on the quotation reads "BUILD HOUSE TO 140 MPH WIND SPEED ROOF RAFTERS (16" OC)."

---

[11] "PSF" stands for pounds per square foot.

**I.** *Gulf Coast Sales Contract Dated October 23, 2006*

The Gulf Coast Sales contract, which is dated October 23, 2006, indicated several optional items purchased by Plaintiffs, including "4[-]ton a/c, anchors, appliances, float marriage, install hardi[e]-plank, install flooring, paint."

**J.** *Deposition of Bob D. Landry*

Bob D. Landry (hereinafter "Mr. Landry"), who is the owner of Landry Transporters, testified that Franklin Homes provided the felt and shingles that his company used on the modular homes, as well as plywood, siding, molding, and sheetrock for marrying the walls. He stated that he installed fifteen-pound felt and that Franklin Homes generally shipped fifteen-pound felt. Mr. Landry indicated he knew nothing of the home's certification to withstand 140-mile-per-hour winds. When asked whether Landry Transporters performed the work in accordance with the manufacturer's suggested installation, Mr. Landry responded, "I would say yes." Additionally, when asked how Landry Transporters insured its work on the roof would withstand 140-mile-per-hour winds, Mr. Landry replied that he did not think any roof could withstand 140-mile-per-hour winds. Regarding installation, he stated his company used four nails per shingle and tapered shims, which he defined as "beveled board." Mr. Landry contended that this was permissible pursuant to the Louisiana Mobile Homes Association. However, when shown Franklin Homes' installation instructions, Mr. Landry agreed that the instructions call for "double hardwood shims."

**K.** *Franklin Homes' Modular Installation Instructions*

Franklin Homes' Modular Installation Instructions provided that all concerned be familiar with the procedures for set-up and the specific procedures for the particular model. The instructions called for double hardwood shims. They

noted a gap may exist between the two halves of the home, in which case the installer should eliminate or minimize the gap.

**L.** *Certified Plaquemines Parish Government's Documents*

The certified Plaquemines Parish documents included Plaintiffs' application for a building permit. The application revealed the foundation was slab; the roof was gable; the roof finish was shingles; and the outside wall finish was "hardyboard [sic] (wood)." The documents also included the inspector's progress report, which stated the foundation is blocks; the frame is wood; the exterior is vinyl; and the interior is sheetrock. The inspector placed a checkmark next to plumbing and electrical.

**M.** *Franklin Homes' Responses to Request for Admissions*

In its responses to request for admissions, Franklin Homes acknowledged it placed a copy of the homeowner's manual in the home. Franklin Homes denied it advertised the home could withstand winds of 140 miles per hour, but admitted the home was designed and constructed in accordance with the 140-mile-per-hour wind load.

**N.** *Testimony of Jerry L. Householder*

At the hearing, Franklin Homes and NTA presented Jerry L. Householder (hereinafter "Mr. Householder") as an expert in professional engineering and construction management. Mr. Householder indicated he reviewed the July 24, 2013 report by Mr. Gurtler. Based on his review, Mr. Householder asserted there was no defect associated with the hinge construction of Plaintiffs' roof. Rather, he explained a hinge was in the roof trusses to allow the roof to fold for transport. He contended that there would have been a gap of ¾ of an inch between the pieces of plywood after the installer swung the two pieces into place. At that point, Mr.

18

Householder explained that the installer was to cover the gap with underlayment and then shingles. He indicated that the gap allowed for expansion and contraction. Mr. Householder asserted the mere fact shingles blew off does not equate to a code violation.

Mr. Householder identified the Saffir-Simpson Hurricane Wind Scale (hereinafter "Saffir-Simpson Scale") prepared by the National Hurricane Center and Central Pacific Hurricane Center. He explained that the Saffir-Simpson Scale is a guide to inform homeowners of what to expect based on wind speeds of a hurricane. The Saffir-Simpson Scale explains that a category 1 hurricane has winds between seventy-four and ninety-five miles per hour and that in such a hurricane, "[w]ell-constructed frame homes could have damage to roof, shingles, vinyl siding, and gutters." Mr. Householder contended that Plaintiffs' home was a well-constructed frame home. He also identified a document naming the costliest storms in history produced by the National Oceanic and Atmospheric Administration and observed that a number of category 1 storms have cost billions. Indeed, Mr. Householder noted Hurricane Isaac, a category 1 storm, cost $2.8 billion.

Mr. Householder contended that the fact that a home sustains damage does not equate with non-compliance of the building code. He explained that Plaintiffs' home contained PlyDry III, which complies with the International Residential Code (hereinafter "IRC") and is suitable for use as a shingle underlayment in IRC construction. Additionally, Mr. Householder indicated he taught IRC at Louisiana State University for fifteen years and is on the council that publishes the IRC. He asserted that the material identified by Mr. Gurtler as thin, paper material was PlyDry III, which he stated is essentially fifteen-pound felt.

Further, Mr. Householder contended that the OSB decking at Plaintiffs' home did not need replacement. In this regard, he submitted the instructions issued by the Engineering Wood Society that explain how to assess water damage in plywood and OSB panels. Mr. Householder asserted that the plywood decking at Plaintiffs' home looked pristine and did not need replacement. He contended that from an engineering standpoint, for the home to shift, it would mean it was no longer sitting on the block the way it was before. However, Mr. Householder stated that Plaintiffs' home did not shift or, if it shifted, it might have been 1/1000 of an inch. He explained that the walls and roof decking of the home formed a rectangle but that if the walls and roof decking had become a parallelogram, this would indicate that racking occurred, which would tear or twist roof decking. Mr. Householder stated the roof decking appeared firmly attached to the trusses.

Mr. Householder disagreed with Mr. Gurtler's statement that gaps in the joints are suggestive of movement. Rather, he contended that the material expands and contracts with changes in the moisture content.

Additionally, Mr. Householder asserted that the 140-mile-per-hour wind load was a wind force resisting design that did not apply to shingles, siding, and shutters. Instead, he explained it applied to studs, floor joists, ceiling rafters, trusses, and sheathing. He stated that the sheathing carries the wind load, so the more sheathing, the better.

Further, Mr. Householder contended shims are a minor detail. He noted that if a home's I-beam does not connect with the blocks, the installer adds shims so the I-beam will contact the blocks. Mr. Householder agreed double shimming was required for Plaintiffs' home because single shimming exceeded the allowable compressive strength of a shim. During his testimony, Mr. Householder reviewed

a photo of a single triangular shim located between the foundation pier and the steel carriage and was informed that the manufacturer's installation instructions did not allow for a single triangular shim. However, Mr. Householder contended that he did not consider the shims to be a safety concern from a structural engineering standpoint.

Finally, Mr. Householder attributed gaps, separation, and cracks in the siding to improper installation. He reviewed pictures of joints with open gaps and a crack, and he stated the joints were "really good." Mr. Householder contended he inspected every joint and did not see any joint that caused him concern. In sum, he opined the home performed as expected during Hurricane Isaac.

## VII. DECEMBER 11, 2020 JUDGMENT

On December 11, 2020, the trial court rendered judgment regarding Defendants' various exceptions and motions for summary judgment.

The trial court granted the exception of peremption and prescription filed by Gulf Coast in part, and denied it in part, dismissing all claims with prejudice except for the claims of fraud and intentional misrepresentation. The trial court denied Gulf Coast's motion for summary judgment as to fraud and intentional misrepresentation.

The trial court granted Landry Transporters' exception of peremption pursuant to La. R.S. 9:2772 and exception of peremption pursuant to La. R.S. 51:1409; and the trial court dismissed all claims against Landry Transporters with prejudice. Additionally, the trial court dismissed Landry Transporters' motion for summary judgment as moot.

The trial court granted in part the exception of peremption and prescription filed by Franklin Homes, and denied it in part, dismissing all claims with

21

prejudice, except for the claims of fraud and intentional misrepresentation. The trial court also denied Franklin Homes' exception of no cause of action. Additionally, the trial court denied in part Franklin Homes' motion for summary judgment as to Plaintiffs' claims of fraud and intentional misrepresentation. The trial court granted in part Franklin Homes' motion for summary judgment, dismissing all claims with prejudice asserted against Franklin Homes, except the claims of fraud and intentional misrepresentation.

The trial court granted in part NTA's exception of peremption and prescription, and denied it in part, dismissing all claims with prejudice except for the claims of fraud and intentional misrepresentation. Also, the trial court granted in part NTA's exception of no cause of action as to the claims of fraud and intentional misrepresentation and otherwise denied the exception as moot. Further, the trial court granted Plaintiffs fifteen days to amend their petition to sufficiently state a cause of action against NTA for fraud and intentional misrepresentation. Lastly, the trial court granted in part NTA's motion for summary judgment, dismissing all claims against NTA with prejudice, except the claims of fraud and intentional misrepresentation.

The trial court certified the judgment as final pursuant to La. C.C.P. art. 1915(B)(1)[12] and ordered all parties to pay their own costs.

---

[12] Louisiana Code of Civil Procedure Article 1915(B)(1) provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

## VIII. APPEAL

On January 19, 2021, via facsimile, Gulf Coast filed a Petition for Devolutive Appeal of the trial court's December 11, 2020 judgment. On January 25, 2021, the Clerk of Court for the 25th Judicial District Court, Parish of Plaquemines, received Gulf Coast's petition for devolutive appeal; and on February 4, 2021, the trial court issued an order granting Gulf Coast an appeal.

On January 29, 2021, Plaintiffs filed a Motion for Devolutive Appeal regarding the trial court's December 11, 2020 judgment. The trial court issued an order granting Plaintiffs an appeal on February 1, 2021.

On May 4, 2021, Franklin Homes filed an answer with this Court to Plaintiffs' appeal. Franklin Homes requested that this Court reverse the portion of the judgment denying their exception of peremption and prescription as to Plaintiffs' claims of fraud and intentional misrepresentation.

### APPEAL BY GULF COAST

### JURISDICTION

Gulf Coast seeks review of the trial court's December 11, 2020 judgment, which denied in part its exception of peremption and prescription and denied in part its motion for summary judgment regarding Plaintiffs' claims of fraud and intentional misrepresentation. In briefing to this Court in support of this Court having jurisdiction over its appeal, Gulf Coast cites the La. C.C.P. art. 1915(B) certification made by the trial court. However, a trial court's certification pursuant to La. C.C.P. art. 1915(B) is not determinative of jurisdiction. *Wadick v. Gen. Heating & Air Conditioning, LLC*, 2014-0187, p. 6 (La. App. 4 Cir. 7/23/14), 145 So.3d 586, 591. Rather, an appellate court has a duty to determine, *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in

23

the court. *Schwarzenberger v. La. State Univ. Health Scis. Ctr.-New Orleans*, 2018-0812, p. 2 (La. App. 4 Cir. 1/9/19), 263 So.3d 449, 451-52. An appellate court's jurisdiction extends to final judgments and judgments made expressly appealable by law. La. C.C.P. art. 2083; *Riley v. Plaquemines Par. Sheriff's Office*, 2020-0262, p. 4 (La. App. 4 Cir. 9/9/20), __ So.3d __, 2020 WL 5405923, *2. A final judgment is one "that determines the merits in whole or in part." La. C.C.P. art. 1841. An interlocutory judgment is one that determines "preliminary matters in the course of the action." *Id.*

Gulf Coast seeks review of the December 11, 2020 judgment, which denied in part its exception of peremption and prescription. The denial of an exception of peremption and prescription does not determine the merits in whole or in part. Thus, it is interlocutory. "An interlocutory judgment is appealable only when expressly provided by law." La. C.C.P. art. 2083; *see also Jacobs v. Metzler-Brenckle*, 2020-0585, pp. 12-13 (La. App. 4 Cir. 5/26/21), 322 So.3d 347, 356, *writ denied*, 2021-00911 (La. 10/19/21), 326 So.3d 257.

In its jurisdictional statement, Gulf Coast cites La. C.C.P. art. 1915(B)(1), which provides:

> When a court renders a partial judgment or partial summary judgment or sustains an exception in part, as to one or more but less than all of the claims, demands, issues, or theories against a party, whether in an original demand, reconventional demand, cross-claim, third-party claim, or intervention, the judgment shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay.

By its plain language, La. C.C.P. art. 1915(B)(1) does not authorize a trial court to designate a judgment denying an exception as final for purposes of an immediate appeal. *See also Bd. of Supervisors of La. State Univ. v. Dixie Brewing Co.*, 2014-0641, p. 4 (La. App. 4 Cir. 11/19/14), 154 So.3d 683, 687. A trial court's

24

certification of an interlocutory judgment as "final" pursuant to La. C.C.P. art. 1915(B)(1) does not transform the interlocutory judgment into a judgment subject to an immediate appeal. *Sullivan v. Malta Park*, 2016-0875, p. 3 (La. App. 4 Cir. 1/31/17), 215 So.3d 705, 708. In *Jacobs*, this Court noted, "[t]he proper procedural vehicle to seek review of an interlocutory judgment that is not immediately appealable is an application for supervisory writ." 2020-0585, p.13, 322 So.3d at 356 (quoting *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 2012-0906, 2012-0907, p. 4 (La. App. 4 Cir. 2/20/13), 155 So.3d 560, 562).

This Court has exercised its broad discretionary powers and converted appeals into applications for supervisory writs under La. C.C.P. art. 2164. *See Jacobs*, 2020-0585, p. 14, 322 So.3d at 357. In deciding whether to exercise its discretion to convert an appeal into an application for supervisory writs, this Court "must first determine whether 'the motion for appeal was filed within the thirty-day delay allowed under Rule 4-3 of the Uniform Rules-Courts of Appeal for the filing of an application for supervisory writs.'" *Id*. (quoting *Ramirez v. Evonir, LLC*, 2014-1095, p. 5 (La. App. 4 Cir. 4/9/15), 165 So.3d 260, 263). Under Rule 4-3 of the Uniform Rules, Courts of Appeal, a party must file an application for supervisory writ within thirty days of the notice of the rendition of the judgment. In the instant matter, the trial court rendered judgment on December 11, 2020, and the Clerk of Court for the 25th Judicial District Court, Parish of Plaquemines, issued notice of the rendition of judgment to the parties on December 11, 2020. On January 19, 2021, Gulf Coast filed a petition for devolutive appeal via facsimile. Accordingly, Gulf Coast did not file the petition for appeal within the thirty-day period applicable to supervisory writs. Thus, this Court declines to

exercise its discretion to convert the appeal to an application for supervisory writs and dismisses Gulf Coast's appeal for lack of jurisdiction.

## ANSWER TO APPEAL BY FRANKLIN HOMES

### JURISDICTION

In its answer filed with this Court, Franklin Homes likewise seeks review of the trial court's December 11, 2020 judgment, which denied its exceptions of peremption and prescription and no cause of action as to Plaintiffs' claims of fraud and intentional misrepresentation. Similar to Gulf Coast, Franklin Homes relies on the trial court's certification of the judgment as final pursuant to La. C.C.P. art. 1915(B) to support its claim that this Court has jurisdiction to review its answer.

Louisiana Civil Code Article 2133(A) provides:

> An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised, or reversed in part or unless he demands damages against the appellant. In such cases, he must file an answer to the appeal, stating the relief demanded, not later than fifteen days after the return day or the lodging of the record whichever is later. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.

In *Elysian, Inc. v. Neal Auction Co.*, the appellants filed a motion for appeal seeking review of a judgment granting a motion for sanctions. 2020-0674, p. 4 (La. App. 4 Cir. 7/21/21), 325 So.3d 1075, 1080. Subsequently, the appellants filed a second motion for appeal seeking review of a second judgment granting a motion for sanctions. *Id.*, 2020-0674, p. 6, 325 So.3d at 1081. Additionally, the appellants sought review of judgments denying the special motions to strike and motions for partial summary judgment, as well as a judgment granting in part and denying in part appellee's motion for partial summary judgment. *Id.*

26

In *Elysian, Inc*., this Court cited its decision in *Trahant v. Perez*, 2002-1414 (La. App. 4 Cir. 3/19/03), 843 So.2d 479. In *Trahant*, this Court determined that when an appellant seeks to appeal a judgment of sanctions or contempt pursuant to La. C.C.P. art. 1915(A)(6), such an appeal is restricted solely to the judgment on the issue of sanctions or contempt. *Trahant*, 2002-1414, p. 9, 843 So.2d at 484. This Court indicated the appellant could not seek review of the trial court's denial of an exception of no cause of action, which is an interlocutory judgment, within the restricted appeal of the sanctions judgment. *Id*.

Likewise, this Court, in *Elysian, Inc.*, found that an appellant cannot seek review of the interlocutory judgments denying special motions to strike and denying motions for partial summary judgment within the appeal restricted to the sanctions judgment. 2020-0674, pp. 10-11, 325 So.3d at 1084. It is only when an appellant seeks review of a final judgment, an unrestricted appeal, that an appellant may seek review of other interlocutory judgments contained in the record.

In *Elysian, Inc.,* this Court also cited *Sellers v. El Paso Industrial Energy, L.P.*, 2008-0403 (La. App. 5 Cir. 2/10/09), 8 So.3d 723. In *Sellers*, the Fifth Circuit Court of Appeal discussed *Trahant* in connection with an answer filed by an appellee. 2008-0403, p. 15, 8 So.3d at 731. Noting an answer was the equivalent of a cross-appeal, the Fifth Circuit determined an appellee, by filing an answer, cannot seek review of adverse interlocutory rulings within a restricted appeal. *Id*., 2008-0403, pp. 15-16, 8 So.3d at 731. The Fifth Circuit dismissed the appellee's answer. *Id*., 2008-0403, p. 18, 8 So.3d at 732.

In this matter, Plaintiffs' appeal seeks review of the trial court's December 11, 2020 judgment, which dismissed their claims against Landry Transporters and granted in part Gulf Coast's, Franklin Homes', and NTA's exceptions of

27

prescription and peremption thereby dismissing all claims against Gulf Coast, Franklin Homes, and NTA except fraud and intentional misrepresentation. The judgment dismissing Landry Transporters is final for purposes of appeal pursuant to La. C.C.P. art. 1915(A)(1). The judgment granting in part the exceptions of peremption and prescription is subject to certification pursuant to La. C.C.P. art. 1915(B)(1) for purposes of an immediate appeal. As noted in *Elysian*, *Inc.*, *Trahant*, and *Sellers*, such appeals are restricted. In the course of this restricted appeal, neither Plaintiffs, nor Franklin Homes by way of an answer, may seek review of interlocutory judgments rendered by the trial court.

As previously discussed, this Court, in determining whether to exercise its broad discretionary power to convert an appeal into applications for supervisory writ under La. C.C.P. art. 2164, first ascertains whether the motion for appeal was filed within thirty days of notice of judgment per Rule 4-3 of the Uniform Rules, Courts of Appeal. *Jacobs*, 2020-0585, p. 14, 322 So.3d at 357 (quoting *Ramirez*, 2014-1095, p. 5, 165 So.3d at 263). In the instant matter, the trial court rendered judgment on December 11, 2020, and the Clerk of Court for the trial court issued notice of the rendition of judgment on December 11, 2020. On May 5, 2021, Franklin Homes filed its answer to the appeal. Franklin Homes did not file the answer within the thirty-day period applicable to supervisory writs. Therefore, we decline to exercise our discretion to convert the answer to an application for supervisory writs and dismiss Franklin Homes' answer for lack of jurisdiction.

28

## PLAINTIFFS' APPEAL

## I. ASSIGNMENT OF ERROR NUMBER 1 – The Trial Court Erred in Granting the Exceptions of Peremption and Prescription in Part.

### A. *Standard of Review*

"Peremption is a period of time fixed by law for the existence of a right." La. C.C. art. 3458. Unless the right is exercised timely, it is extinguished upon the expiration of the peremptive period. *Id.* Unlike prescription, a peremptive period may not be renounced, interrupted, or suspended. La. C.C. art. 3461. Courts strictly construe peremptive statutes against peremption and in favor of the claim. *Rando v. Anco Insulations, Inc.*, 2008-1163, p. 21 (La. 5/22/09), 16 So.3d 1065, 1083.

If evidence is introduced at the trial on a peremptory exception, appellate courts review the entire record "to determine whether the trial court was manifestly erroneous with its factual conclusions." *Thrasher Constr. Inc. v. Gibbs Residential, L.L.C.*, 2015-0607, pp. 6-7 (La. App. 4 Cir. 6/29/16), 197 So.3d 283, 289 (quoting *Metairie III v. Poche' Constr., Inc.*, 2010-0353, p. 4 (La. App. 4 Cir. 9/29/10), 49 So.3d 446, 449). The *Thrasher* Court further noted:

> If the trial court's findings are reasonable in light of the entire record, then the appellate court may not reverse even though it would have weighed the evidence differently had it been sitting as the trier of fact. *Rando v. Anco Insulations Inc.*, [20]08-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082, *citing Stobart v. State, through DOTD*, 617 So.2d 880, 882-83 (La. 1993). As further explained by the Louisiana Supreme Court,
>
> > Under the manifest error standard, in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.

> *Lomont v. Bennett*, [20]14-2483, p. 17 (La. 6/30/15), 172 So.3d 620,
> 632-33.

*Id.*, 2015-0607, p. 7, 197 So.3d at 289.

**B. *Redhibition Claim***

In Louisiana, a "seller warrants the thing sold against redhibitory defects, or vices, in the thing sold." La. C.C. art. 2520. "A defect is redhibitory when it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect." *Id.* Louisiana Civil Code Article 2534(A) provides:

> The action for redhibition against a seller who did not know of the existence of a defect in the thing sold and the action asserting that a thing is not fit for its ordinary or intended use prescribe in two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first.

However, if the action for redhibition is brought "against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer or ten years from the perfection of the contract of sale, whichever occurs first." La. C.C. art. 2534(B).

In support of their argument that La. C.C. art. 2534(B) applies, Plaintiffs cite *Credeur v. Champion Homes of Boaz, Inc.*, 2008-1096 (La. App. 3 Cir. 3/4/09), 6 So.3d 339. Therein, the plaintiffs purchased a mobile home from the defendant, Tatman. *Credeur*, 2008-1096, p. 2, 6 So.3d at 341. Seven years after the purchase, the plaintiffs noticed a discolored corner of the ceiling that eventually led to the spread of mold and moisture throughout their home. *Id.* The plaintiffs filed a petition for damages setting forth several claims, including redhibition. *Id.*, 2008-1096, p. 1, 6 So.3d at 341. Tatman filed an exception of prescription as to the

redhibition claim, and the trial court granted the exception. *Id.*, 2008-1096, p. 2, 6 So.3d at 341. In reversing, the Third Circuit Court of Appeal stated:

> Our review of the statutes and jurisprudence leads us to the conclusion that a retailer who actively participates in the construction, assembly, or installation of the component parts that are essential for the structure to become usable for its intended purpose, and this end structure has a redhibitory defect, the retailer is held to the same standard as the manufacturer, i.e., he is presumed to be a bad faith seller. A seller who receives component parts of a structure and then assembles them into a complete whole is, in fact, a seller who is the actual maker of the complete whole. Thus, if the whole has a redhibitory defect, this seller is presumed to be in bad faith.

*Id*., 2008-1096, p. 4, 6 So.3d at 342. The Third Circuit noted that Tatman installed the mobile home and held Tatman to the same standard as a manufacturer. *Id*., p. 5, 6 So.3d at 343. Accordingly, the Third Circuit held that if the installation was defective, Tatman presumptively knew of the defects. *Id.* Thus, the Third Circuit determined that prescription began to run from the day the plaintiffs discovered the defect, and reversed the judgment granting the exception of prescription. *Id*., 2008-1096, pp. 5-6, 6 So.3d at 343.

Plaintiffs herein assert that Franklin Homes, as the manufacturer, is presumed to have knowledge of the alleged defects in their home. They contend prescription did not begin to run until they discovered the defects after Hurricane Isaac.

Plaintiffs argue that La. C.C. art. 2540 applies to its claim against NTA. Louisiana Civil Code Article 2540 provides that "[w]hen more than one thing are sold together as a whole so that the buyer would not have bought one thing without the other or others, a redhibitory defect in one of such things gives rise to redhibition for the whole." La. C.C. art. 2540. Plaintiffs allege the contract for construction of their home included a certification the home met applicable

building standards; and they contend a home lacking such a certification had no practical use to them. Further, Plaintiffs argue this Court should consider all components of the home, including the certification, as a single unit for purposes of redhibition.

Additionally, Plaintiffs assert that Gulf Coast had a significant role in the installation of their home. Thus, Plaintiffs contend Gulf Coast is presumed to know of the defects.

In its appellee brief, Franklin Homes counters that redhibition does not apply to the contract herein because the contract is a construction contract, not a sales contract. Further, Franklin Homes contends La. R.S. 9:2772 applies to perempt Plaintiffs' claims.

In its appellee brief, NTA argues redhibition only applies between a purchaser and the seller and manufacturer of a product. NTA submits it did not sell or manufacture any product. Further, NTA further argues that La. R.S. 9:5607 perempts any claims against it.

In its appellee brief, Gulf Coast contends that Plaintiffs' reliance upon *Credeur* is misplaced. Gulf Coast asserts it did not install Plaintiffs' home like the seller did in *Credeur*.

We note the argument that the contract in this case was a contract to build or a construction contract has merit. Nonetheless, Franklin Homes, NTA, and Gulf Coast filed exceptions of peremption and/or prescription to the claim of redhibition, which the trial court granted. In analyzing the exceptions of peremption and/or prescription to the claim of redhibition, it is important to note the trial court admitted evidence into the record. Plaintiffs presented the depositions of Mr. Gurtler, his report, the contract, and other evidence. Franklin

Homes and NTA presented Mr. Householder as an expert witness in engineering. He did not identify a defect or code violation in Plaintiffs' home after Hurricane Isaac. Rather, Mr. Householder explained with a category 1 storm, the owner of a well-constructed frame home can expect damage to roof, shingles, vinyl siding and gutters. He opined that Plaintiffs' home was a well-constructed frame home. Additionally, Mr. Householder testified the home performed as expected during Hurricane Isaac. Mr. Gurtler likewise noted the 140-mile-per-hour wind load does not mean parts of the roof will not fail.

The record contains sufficient evidence for the trial court to conclude Plaintiffs' home lacked a defect because it performed as expected during a category 1 hurricane. Thus, when viewing the October 23, 2006 Gulf Coast contract as a contract of sale, evidence exists to support a finding that Gulf Coast, Franklin Homes, and NTA lacked knowledge of a defect in Plaintiffs' home because it performed as expected in a category 1 hurricane. The peremptive period in such a situation is set forth in La. C.C. art. 2534(A). Under that provision, an action for redhibition prescribes "two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first." La. C.C. art. 2534(A).

Plaintiffs' reliance upon *Credeur* is misplaced. In their depositions, Plaintiffs indicated they had control of the specifications of the modular home and requested numerous upgrades. They negotiated with Gulf Coast, utilizing the quotation provided by Franklin Homes, to select desired options and determine the price prior to Franklin Homes constructing the home. Franklin Homes furnished skill and labor to build the desired modular home. In *Credeur*, there is no evidence the plaintiffs controlled the specifications of the mobile home or otherwise entered

33

into a contract to build. Further, the seller in *Credeur* also installed the mobile home. 2008-1096, pp. 4-5, 6 So.3d at 342-43. In this instance, Landry Transporters delivered and installed the modular home on Plaintiffs' property, not Gulf Coast.

The trial court's judgment granting the exceptions of peremption and prescription as to the claim of redhibition against Gulf Coast, Franklin Homes, and NTA, is reasonable in light of the entire record. Thus, the trial court did not manifestly err in granting the exceptions of peremption and prescription as to the claim of redhibition.

**C.** *Remaining Tort Claims*

In their appellant brief, Plaintiffs contend the trial court erred in granting the exception of peremption or prescription as to their claims for violation of LUTPA, negligence, negligent misrepresentation, violation of LPLA, detrimental reliance, and breach of contract. They assert that the prescriptive period found in La. C.C. art. 3493 applies to the remaining tort claims. Louisiana Civil Code Article 3493 states that "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." Plaintiffs insist they could not acquire knowledge of the damage until Hurricane Isaac.

**1. New Home Warranty Act**

In their briefs, Defendants separated the remaining claims and argued each remaining claim was perempted or prescribed. First, they relied on the peremptive period provided in the New Home Warranty Act (hereinafter "NHWA"). Notably, the NHWA sets forth exclusive remedies, warranties, and peremptive periods between a builder and an owner of home construction. La. R.S. 9:3141-50. The

NHWA defines "'[b]uilder' [as] any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence." La. R.S. 9:3143(1). The NHWA further provides:

> (3) "Home" means any new structure designed and used only for residential use, together with all attached and unattached structures, constructed by the builder whether or not the land was purchased from the builder. Such term includes structures containing multiple family dwellings or residences.

> (4) "Initial purchaser" means any person for whom a home is built or the first person to whom a home is sold upon completion of construction.

La. R.S. 9:3143(3)-(4).

The NHWA applies to Franklin Homes as a builder; Plaintiffs as initial purchasers; and their modular home as a new home. Pursuant to the NHWA, Franklin Homes warranted the following to Plaintiffs:

> (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

> (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

> (3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

La. R.S. 9:3144.

On its face, Plaintiffs' Petition filed more than five years after the warranty commencement date appears perempted by La. R.S. 9:3144. Nonetheless, the

35

Louisiana Supreme Court has recognized some claims pertaining to new homes are separate from the NHWA. In *Stutts v. Melton*, Mr. and Mrs. Melton, the defendants, built a residential home, and they resided in it for approximately nine months. 2013-0557, p. 1 (La. 10/15/13), 130 So.3d 808, 810. During that time, the Meltons noticed color bleeding on the walls and driveway due to a defect in the roof. *Id.*, 2013-0557, pp. 1-2, 130 So.3d at 810. The roofing manufacturer and the Meltons settled the claim, and the Meltons received funds to replace the roof. *Id.*, 2013-0557, p. 2, 130 So.3d at 810. Rather than replace the roof, the Meltons cleaned the color bleeding and added gutters to prevent future color bleeding. *Id.* Shortly thereafter, the Meltons sold the property to the plaintiffs and executed a Residential Property Disclosure Form declaring the property did not possess any known defects. *Id.*, 2013-0557, p. 1, 130 So.3d at 810.

After the plaintiffs experienced color bleeding, they learned the Meltons had received funds to replace the roof and failed to do so. *Id.*, 2013-0557, p. 2, 130 So.3d at 810. The plaintiffs filed suit contending the Meltons committed fraud. *Id.* The Meltons argued the NHWA provided the plaintiffs' exclusive remedy. *Id.*, 2013-0557, p. 3, 130 So.3d at 811. Further, the Meltons argued the plaintiffs' claim was perempted by the NHWA. *Id.* The Louisiana Supreme Court disagreed and determined the NHWA did not exclude a seller from other contract law provisions. *Id.*, 2013-0557, p. 7, 130 So.3d at 813. The Louisiana Supreme Court held that the Meltons, the sellers, were bound to disclose known defects in the Residential Property Disclosure Form required by law because they resided in the home prior to the sale. *Id.*, 2013-0557, pp. 7-8, 130 So.3d at 813. The Supreme Court held:

> [A] fraudulent misrepresentation on the statement is not a claim "relative to home construction" under La. R.S. 9:3150; it is a claim that the seller has knowingly misrepresented that the home has a quality which he knows it not to have. In this case, a roof free from defects.

*Id.*, 2013-0557, p. 8, 130 So.3d at 813-14.

Similarly, in *Robinson v. Wayne and Beverly Papania and Pyrenees Investments, L.L.C.*, the First Circuit Court of Appeal determined the NHWA is not the exclusive remedy available to a new homeowner. 2015-1354, p. 7 (La. App. 1 Cir. 10/31/16), 207 So.3d 566, 572-73, The First Circuit noted the "NHWA is designed to protect the owner from faulty workmanship, but not to insure completion of the construction of a home under the terms of the contract between the owner and builder." *Id.*, 2015-1354, p. 7, 207 So.3d at 573. Relying on *Stutts*, the First Circuit indicated the plaintiffs' fraud claim, arose "out of a separate and distinct transaction or occurrence—i.e., formation of the contract—from that of performance of the contract." *Id.*, 2015-1354, p. 9, 207 So.3d at 574.

"Fraud" is defined as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. In *Yi-Zarn Wang v. Boudreaux*, this Court noted "[t]he two essential elements of fraud are the intent to defraud or gain an unfair advantage and actual or probable damage." 2020-0249, p. 12 (La. App. 4 Cir. 1/15/20), 310 So.3d 730, 738 (quoting *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4 Cir. 1992)).

The essential elements of "intentional misrepresentation" are "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g*

*Ass'ns, Inc.*, 2006-0974, p. 3 (La. App. 4 Cir. 6/20/07), 962 So.2d 1089, 1091 (quoting *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D. La.1995)).

In this instance, Plaintiffs contend they expressed their desire for a home that could withstand a hurricane. They assert that the representation the home could withstand 140-mile-per-hour winds was the "biggest selling point." In particular, Plaintiffs indicate this was important because Hurricane Katrina destroyed their prior home. Plaintiffs allege that during the formation of the contract, Franklin Homes, Gulf Coast, and NTA represented their home could withstand 140-mile-per-hour winds and that their home was very sturdy. Notably, the Franklin Homes' quotation stated, "BUILD HOUSE TO 140 MPH WIND SPEED ROOF RAFTERS (16" OC)." Gulf Coast heavily advertised the 140-mile-per-hour wind speed. The quotation referenced engineering fees associated with certain items. Plaintiffs state they would not have purchased the home otherwise. Thus, while any claim for an alleged defect in the property is presumably preempted by the NHWA, Plaintiffs stated a cause of action for fraud and intentional misrepresentation in the formation of the contract. The cause of action for fraud or intentional misrepresentation in the formation of the contract is subject to a prescriptive period of one year commencing to run from the day the injury or damage is sustained. La. C.C. art. 3492. When the damage is to immovable property, the one-year prescriptive period commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. La. C.C. art. 3493.

Gulf Coast, Franklin Homes, and NTA contend that Plaintiffs should have acquired knowledge of any alleged defect due to the damages incurred by Hurricane Gustav. In discussing constructive notice, this Court has held:

"Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry." *Oracle Oil, L.L.C. v. EPI Consultants, Div. of Cudd Pressure Control, Inc.,* [20]11-0151, p. 6 (La. App. 1 Cir. 9/14/11), 77 So.3d 64, 69. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription." *Id.* "In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances." *Id.,* [20]11-0151, p. 7, 77 So.3d at 69. "The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct.'" [*In Re Med. Review Panel of*] *Lafayette,* [20]03-0457, p. 6 [(La. App. 5 Cir. 10/15/03)], 860 So.2d [86,] 89 [(quoting] *Campo v. Correa,* [20]01-2707, p. 12 (La. 6/21/02), 828 So.2d 502, 511[)].

*In re Hume,* 2014-0844, pp. 7-8 (La. App. 4 Cir. 4/1/15), 165 So.3d 233, 239.

The record herein lacks evidence that Plaintiffs' education and intelligence should have led them to conclude Franklin Homes, Gulf Coast, and/or NTA misrepresented the sturdiness of the home in the formation of the contract based on the damages sustained in Hurricane Gustav. Moreover, we take judicial notice that the top wind speeds during Hurricane Gustav were a maximum 117 per hour, not 140, which is what the home was warranted to withstand.[13] *See Daurbigney v. Liberty Pers. Ins. Co.,* 2018-929, p. 2 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69, 71 n. 1. During Hurricane Gustav, Plaintiffs lost some shingles leading to water intrusion and damages to a limited area. Hurricane Isaac resulted in the roof partially collapsing, as well as water intrusion and mold throughout the entirety of the home. Thus, Hurricane Isaac, and the resulting damage, placed Plaintiffs on notice that the alleged representations were false. The prescriptive period commenced to run after the damage caused by Hurricane Isaac.

---

[13] *See* https://www.weather.gov/lix/gustavsummary.

**2. La. R.S. 9:2772: "Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon"**

Gulf Coast, Franklin Homes, and NTA also cited La. R.S. 9:2772 in support of their exceptions of peremption and prescription. Louisiana Revised Statute 9:2772 states, in pertinent part:

> A. Except as otherwise provided in this Subsection, no action, whether *ex contractu*, *ex delicto*, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought . . . against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:
>
> > . . . .
>
> (1)(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.
>
> (1)(c) If, within ninety days of the expiration of the five-year peremptive period described in Subparagraph (a) of this Paragraph, a claim is brought against any person or entity included within the provisions of this Subsection, then such person or entity shall have ninety days from the date of service of the main demand or, in the case of a third-party defendant, within ninety days from service of process of the third party demand, to file a claim for contribution, indemnity or a third-party claim against any other party.

La. R.S. 9:2772(A)(1)(b)-(c).

Gulf Coast, Franklin Homes, and NTA contend that Plaintiffs filed suit more than five years and ninety days after first occupying the property in November 2006. Thus, they assert that all claims against them were perempted or prescribed by La. R.S. 9:2772(A)(1)(b) and (c).

In their brief, Plaintiffs counter that the fraud exception applies. Louisiana Revised Statute 9:2772 also provides that "[t]he peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon." La. R.S. 9:2772(H)(1).

In *Thrasher Construction Co.*, this Court indicated the five-year peremptive period does not apply to claims in which fraud caused the alleged breach of contract or damages. 2015-0607, p.15, 197 So.3d at 293. As noted previously, Plaintiffs allege the fraud committed by Franklin Homes, Gulf Coast, and NTA caused the alleged breach of contract and damages. Thus, Plaintiffs' claims asserted pursuant to La. R.S. 9:2772 are not perempted because Plaintiffs allege fraud.

**3. La. R.S. 9:5607: "Actions against a professional engineer"**

NTA claimed peremption based on La. R.S. 9:5607, which is the statute that specifically applies to engineers. Louisiana Revised Statute 9:5607 provides, in pertinent part:

> A. No action for damages against any professional engineer . . . relative to development plans which have been certified by a professional engineer . . . whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:
>
> . . . .

41

(2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded;

. . . .

C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

. . . .

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

The five-year peremptive period set forth in La. R.S. 9:5607 applies to all claims except fraud and intentional misrepresentation. As set forth above, Plaintiffs allege fraud and intentional misrepresentation. Thus, their claims asserted against NTA are not perempted because they have alleged fraud.

**4. La. R.S. 51:1409: The Louisiana Unfair Trade Practices Act**

Plaintiffs also asserted a claim under LUTPA. Louisiana Revised Statute 51:1409(A) provides, in pertinent part:

Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually . . . to recover actual damages.

A private action under LUTPA shall be subject to a prescriptive period of one year from the time of the transaction or act giving rise to the cause of action. La. R.S. 51:1409(E). This Court has held the one-year period to be peremptive in *Bottinelli Real Estate, L.L.C. v. Johns Manville, Inc.*, 2019-0619, p. 6 (La. App. 4 Cir 12/27/19), 288 So.3d 179, 185.

Herein, Plaintiffs filed their claim on August 28, 2013. The sale, which constitutes the transaction or act giving rise to their claim, occurred on October 23,

2006. Thus, the trial court correctly determined the LUTPA claim was perempted pursuant to La. R.S. 51:1409(E) because the claim was filed several years after the transaction or act giving rise to Plaintiffs' claim.

Hence, we find that the trial court did not manifestly err in granting the exceptions of peremption and prescription as to all claims, except fraud and intentional misrepresentation, against Gulf Coast, Franklin Homes, and NTA; and its judgment is reasonable in light of the entire record.

## II. ASSIGNMENT OF ERROR NUMBER 2 – The Trial Court Did Not Err in Granting Landry Transporters' Exception of Peremption Pursuant to La. R.S. 9:2772.

Plaintiffs argue Landry Transporters knew, or should have known, it needed to construct the roof properly in order for the roof to sustain wind speeds of 140 miles per hour. As noted earlier, fraud is a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. art. 1953. Plaintiffs acknowledged Landry Transporters did not make any representations regarding the home's ability to sustain 140-mile-per-hour winds or otherwise to them. Further, Plaintiffs did not execute a contract with Landry Transporters, and there is no allegation Landry Transporters participated in the formation of the contract in any manner. Rather, Plaintiffs assert Landry Transporters committed fraud by not utilizing the underlay required by the building code. However, the testimony revealed Landry Transporters utilized the underlay or felt provided by Franklin Homes, and Mr. Householder opined the underlay in Plaintiffs' home complied with the building code. Plaintiffs also contend Landry Transporters utilized shims not allowed by Franklin Homes; but Mr. Householder opined the shims were not a safety concern from a structural engineering standpoint. Landry Transporters

presented evidence it did not commit fraud in the performance of its work. Plaintiffs rely on the denial of the exceptions as to the claim of fraud filed by Gulf Coast, Franklin Homes, and NTA in support of their argument the trial court erred in granting the exception filed by Landry Transporters. However, Gulf Coast, Franklin Homes, and NTA are distinguishable from Landry Transporters because they allegedly participated in the formation of the contract. Landry Transporters did not participate in the formation of the contract. Thus, Plaintiffs' claims against Landry Transporters involve allegations of a deficient performance by Landry Transporters. Such a claim is perempted by La. R.S. 9:2772.

The trial court's judgment granting the exception of peremption filed by Landry Transporters pursuant to La. R.S. 9:2772 is reasonable in light of the entire record. The trial court did not manifestly err in granting the exception of peremption filed by Landry Transporters.

### III. ASSIGNMENT OF ERROR NUMBER 3 – The Trial Court Erred in Granting the Exception of Peremption filed by Landry Transporters Pursuant to La. R.S. 51:1401 (LUTPA).

As noted earlier, a private action under LUTPA is subject to a prescriptive period of one year from the time of the transaction or act giving rise to the cause of action, and this Court has held the one-year period to be peremptive in *Bottinelli*, 2019-0619, 288 So.3d 179. See La. R.S. 51:1409(E).

Herein, Plaintiffs filed their claim on August 28, 2013. Mrs. McGaha indicated that Plaintiffs resided in the home by November 26, 2006. Landry Transporters delivered and assembled the modular home on Plaintiff's property by November 26, 2006. Thus, the trial court correctly determined the claim was perempted pursuant to La. R.S. 51:1409(E) because the claim was filed several years after the transaction or act giving rise to the claim.

The trial court's judgment granting the exception of peremption filed by Landry Transporters pursuant to La. R.S. 51:1409 is reasonable in light of the entire record. Thus, the trial court did not err in granting the exception of peremption filed by Landry Transporters pursuant to La. R.S. 51:1409.

**IV. ASSIGNMENT OF ERROR NUMBER 4 – The Trial Court Erred in Granting the Exception of No Cause of Action filed by NTA.**

Plaintiffs also seek review of the portion of the trial court's December 11, 2020 judgment granting the exception of no cause of action filed by NTA. Notably, in granting the exception of no cause of action, the trial court provided Plaintiffs fifteen days to amend their petition to state a cause of action for fraud or intentional misrepresentation against NTA. This Court has long noted a judgment granting an exception of no cause of action, but providing the plaintiff with leave to amend their petition, is not an appealable judgment. *Menard v. Barrie*, 2013-1284, p. 3 (La. App. 4 Cir. 3/5/14), 137 So.3d 679, 680. A judgment granting an exception of no cause of action, but providing leave to amend the petition is not a final judgment or an interlocutory judgment subject to appeal. *Id.*, 2013-1284, p. 3, 137 So.3d at 680. Rather, such a judgment merely permits an amendment within the delay allowed by the trial court as provided by La. C.C.P. art. 934.

Plaintiffs indicate NTA filed a motion to dismiss due to Plaintiffs' failure to amend their petition in the time provided by the trial court. They contend the trial court granted the motion and dismissed the remaining claims against NTA. Plaintiffs thus assert the December 11, 2020 judgment is now final.

In *Makhoul v. City of New Orleans*, this Court reiterated:

It is clear that "[a]n order of appeal must be obtained for **each** final judgment the appellant seeks to appeal." *St. Philip v. Montalbano*, [20]12-1090, p. 7 (La. App. 4 Cir. 1/9/13), 108 So.3d 277, 282 (internal citations omitted). It is equally clear that "[t]he

jurisdiction of the appellate court attaches upon the granting of the order of appeal, and there can be no appeal absent an order of appeal because the order is jurisdictional." *Osborn Painting, Inc. v. Auxilien*, [20]04-1330, p. 5 (La. App. 5 Cir. 3/29/05), 900 So.2d 969, 972.

2019-1099, p. 5 (La. App. 4 Cir. 12/16/20), 312 So.3d 678, 682 (emphasis added).

This record lacks the final judgment that Plaintiffs seek to appeal and an order specifically granting an appeal of that final judgment. Thus, this Court lacks jurisdiction to consider the judgment granting the exception of no cause of action filed by NTA.

## DECREE

We dismiss the appeal of Gulf Coast Mobile Homes, Inc., and the answer of Franklin Homes, Inc., based on the lack of this Court's jurisdiction. We affirm the portion of the trial court's judgment granting the exceptions of peremption and prescription filed by Gulf Coast Mobile Homes, Inc., Franklin Homes, Inc., and NTA, Inc., except for the claims of fraud and intentional misrepresentation. Further, we affirm the trial court's judgment granting the exception of peremption and prescription filed by Landry Mobile Homes Transporters, Inc. We dismiss David L. McGaha and Melissa B. McGaha's appeal of the portion of the judgment granting NTA, Inc.'s exception of no cause of action for lack of this Court's jurisdiction.

**AFFIRMED; APPEAL OF GULF COAST MOBILE HOMES, INC., DISMISSED; ANSWER OF FRANKLIN HOMES, INC., DISMISSED; APPEAL BY DAVID L. MCGAHA AND MELISSA B. MCGAHA DISMISSED IN PART**